[No. 36526-6-I. Division One. April 20, 1998.]

*In the Matter of the Detention of* MITCHELL A. GAFF, *Appellant.*

*Richard R. Tassano* of *Washington Appellate Project*; and *Suzanne Lee Elliott,* for appellant.

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

ELLINGTON, J. — A jury found that Mitchell Gaff was a sexually violent predator who was likely to reoffend if not placed in a secure setting. He was therefore civilly committed until such time as his mental abnormality or personality disorder has so changed that he is safe to be at large. Gaff argues that prosecutorial misconduct requires reversal, that his commitment constitutes double jeopardy and violates substantive due process and ex post facto laws, and that the court erred by instructing the jury to consider the "feasibility" of treatments less restrictive than secure confinement. We find no reversible error and therefore affirm.

## Facts

In 1979, Mitchell Gaff was convicted of first degree burglary and assault in the second degree. During the assault, he bound a woman's hands, smashed her head onto concrete, and repeatedly hit her with a pistol. The assault ended when the woman escaped. Gaff expressed remorse at sentencing, telling the court he had changed his life by becoming a Christian. He was granted probation and placed on work release.

In 1984, while still on probation, Gaff bound and brutally raped two teenage girls for approximately two hours. For this he received an exceptional sentence of 138 months. His probation was revoked and he began serving his sentences consecutively.

The State filed a sexually violent predator petition shortly before Gaff's scheduled release. During psychologi-

cal evaluations, Gaff admitted to making numerous obscene phone calls and to committing a variety of sexual assaults, including six rapes. The pattern of his crimes was characterized by ever-increasing levels of violence.

Psychologist Dr. Robert Wheeler provided expert testimony for the State. Wheeler diagnosed Gaff as suffering from a mental abnormality classified as sexual sadism, which is a paraphilia characterized by recurrent sexual fantasies, urges, or behaviors involving the psychological or physical suffering of nonconsenting partners. According to Wheeler, sadistic rapists tend to offend chronically, learning little from their experiences. Wheeler testified that Gaff suffered from a chronic personality disorder that made him likely to reoffend. For liability and other reasons, Wheeler doubted that any certified sex offender treatment provider would accept Gaff on an outpatient basis.

Dr. Douglas Allmon provided expert testimony for Gaff. Allmon diagnosed Gaff as a sexual sadist with an antisocial personality disorder, and opined that Gaff had benefited from the deviancy and substance abuse treatment he had received at Twin Rivers Corrections Center. Allmon believed that no accurate predictions can be made as to whether a particular individual is likely to reoffend. He concluded that Gaff could be safely released if subjected to "very, very tightly controlled outpatient circumstances," with any rule violation causing him to be "returned for a very long time to the Special Commitment Center."[1] Allmon opined that some certified treatment providers would be willing to treat Gaff as an outpatient if such controls could be implemented. Allmon did not, however, testify that he would so treat Gaff, instead stating that he would "want to investigate the details of the operation and how it would work[.]"

Constitutional guarantees of equal protection require that sexual predators be afforded the possibility of deten-

---

[1]The Special Commitment Center is a secure facility for sexually violent predators.

tion in a setting less restrictive than secure detention.[2] Consequently, the parties agreed to submit an instruction that allowed the jury to consider the "feasibility" of such alternatives.[3] This wording was chosen to connote the broadest range of considerations as to whether a less restrictive alternative existed. Gaff argued, however, that the term "feasibility" should not allow the prosecutor to argue that the jury could consider the cost of a less restrictive setting, noting that there was no evidence of cost and that cost of less restrictive treatment was not an appropriate consideration. The court agreed, and warned the prosecutor not to argue cost. No such argument was made.

Instead, the prosecutor focused on Gaff's possible future dangerousness. The prosecutor began his argument by making an emotional appeal to society's general fear of crime:

> You know that feeling you get when it's nighttime and you're asleep but something sort of rustles you out of your sleep and you hear this sound and you get this feeling and your head is trying to convince you that it's just the wind or it's the cat, but you still got this sort of feeling that makes you uneasy? It's the fear, and what it's the fear of is someone like Mitchell Gaff.

Concluding his argument, the prosecutor recited Gaff's previous crimes and sentences, and his repeated claims of rehabilitation:

---

[2]*In re Personal Restraint of Young*, 122 Wn.2d 1, 47, 857 P.2d 989 (1993).

[3]The instruction provided:

The State has the burden of proving beyond a reasonable doubt that less restrictive alternative treatment will not be in the best interests of Respondent or others.

Less restrictive alternative treatment means a court order requiring a person to accept treatment in a setting other than at the secure facility of the Special Commitment Center. This may include a variety of housing and monitoring conditions imposed by the court. In considering whether a less restrictive alternative is in the best interests of the Respondent or others[,] you may take into account the *feasibility* of such conditions.

(Emphasis added).

He has come forward throughout his entire involvement with the criminal justice system and laid excuses up and down the line. And the frightening thing or the frustrating thing is, everybody bought 'em.

Ten years he could have gotten for bashing the head of [J.B.] into the concrete because she had the audacity to fight for her life. Ten years, work release and probation. The rape on the [other two victims]. The court said—prosecutor said, this is so egregious, we're going to go outside our guidelines. Laws have fortunately been strengthened. 154 months in prison. Mr. Gaff. Sorry, I'm sorry. I'm sorry. I'm sorry. Judge cuts it to 138 months. Still outside the guidelines. A year and a half.

The judge says, going to run consecutive. Revoke your parole. You still owe us ten years in probation. That is ten years. You got eleven and a half. They are going to run one after another. 21 and a half years.

Goes to prison. There, before he gets blaming it on alcohol or doing that, it's, "I found God now." And in time the parole board says, "The heck with this ten years, that's enough; we'll just parole you to this other case, give you a break."

I think Mr. Gaff has got enough breaks. I think that's enough. He has come forward enough times in his life and said, I got it this time, let's give him a break. And I think it's enough to say, huh-uh, you're going to stay where you are until you really, really, really, prove it, not just say you have.

. . . Mr. Gaff keeps blaming, apologizing, excusing, explaining. And I don't think we need to have any more [J.B.s] getting her [sic] face beat in. I don't think [A.B] should have more fourteen-year-old girls being raped. I don't think that we need any more [M.B.s] being assaulted seven times and then beaten so severely that she couldn't recognize herself in the mirror because she had the audacity to fight for her life.

. . . .

You have a tool that is available to you. And my sense is, you may all go back into the jury room and yell at these judges who did these things. None of them sit on the bench anymore. You can't even vote against 'em. You may be angry. You may say, "How he did [sic] only get eleven and a half years?" You

may share the incredible frustrations with the law which we may all share. There is nothing we can do about it.

But there is one tool. You are asked to say there is something about Mr. Gaff that makes it more likely—likely he is going to do this again, and I am willing to run that risk based on the record I've got right now. If you do run that risk, you are going to have to run it with Mr. Gaff. And with Dr. Allmon, the most liberal guy in the state, working in the program, described as a joke, that's the risk you take.

Defense counsel made no objection to the prosecutor's argument.

The jury found that Gaff was a sexually violent predator and that his and others' best interests would not be served by placing him in a setting less restrictive than detention. The court therefore committed Gaff to a secure facility until such time as his mental abnormality or personality disorder has been modified to the point where he would be safe to be at large.

## Prosecutorial Misconduct

The first issue is whether prosecutorial misconduct requires reversal. This claim requires Gaff to show that the prosecutor's actions were improper and had prejudicial effect. *State v. Hoffman*, 116 Wn.2d 51, 93, 804 P.2d 577 (1991). Improper arguments are evaluated in context of the total argument, the issues addressed in the case, and the evidence addressed in the argument. *State v. Stith*, 71 Wn. App. 14, 19, 856 P.2d 415 (1993). Misconduct is prejudicial if there is a substantial likelihood that it affected the verdict. *Stith*, 71 Wn. App. at 19.

A prosecutor may not properly invite the jury to decide any case based on emotional appeals. *See, e.g., State v. Echevarria*, 71 Wn. App. 595, 598-99, 860 P.2d 420 (1993). The prosecutor violated that tenet by equating uneasy sleep and noises in the night to the fear of "someone like Mitchell Gaff." Nevertheless, this misconduct was not objected to. Reversal is appropriate only if the argument was so

flagrant and ill-intentioned that it could not have been neutralized via curative instruction. *Hoffman,* 116 Wn.2d at 93. That test is not met here.

The tenor of the improper argument was apparent from the prosecutor's first few phrases. Had an objection been made, the judge could have reprimanded the prosecutor and instructed the jury that it was to decide the case based only on the evidence, thereby curing the misconduct and likely preventing the remainder of the improper argument. An objection and curative instruction at the end of this entire passage also would have been effective.

We also note that in a sexual predator commitment proceeding, the prosecutor is entitled to argue that a respondent's future dangerousness prevents placement in a less restrictive setting than secure confinement. *See* RCW 71.09.050; RCW 71.05.320; RCW 71.05.340; *State v. Gentry,* 125 Wn.2d 570, 641, 888 P.2d 1105, *cert. denied,* 516 U.S. 843, 116 S. Ct. 131, 133 L. Ed. 2d 79 (1995). Thus, an argument that Gaff should be committed because the evidence demonstrated a strong likelihood of future offense would have been proper. To a limited degree, the emotional appeal here referred to Gaff's future dangerousness. The fact that the improper argument could easily have been reformulated to conform to proper standards supports our conclusion that the misconduct was not so flagrant and ill-intentioned that it could not have been neutralized by curative instruction.

The next issue is whether reversal is required because of the prosecutor's reference to civil commitment as "a tool." Gaff argues that the prosecutor invited the jury to commit Gaff in order to "send a message" about lenient sentencing practices. To the extent the prosecutor suggested that this "tool" of civil commitment should be invoked to impose further punishment, the argument would clearly constitute misconduct because the purpose of the Community Protection Act is not to impose punishment but to provide treatment and to protect the public. Any argument for further punishment raises substantive due process and ex post facto issues. *See, e.g., Kansas v.*

*Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 2079-80, 2085-87, 138 L. Ed. 2d 501 (1997); *see id.* at 2087 (Kennedy, J., dicta in concurring opinion); *see id.* at 2090-98 (Breyer, J., four vote dissent); *In re Personal Restraint of Young*, 122 Wn.2d 1, 18-26, 857 P.2d 989 (1993).

The prosecutor's argument here was improper. His comments were critical of leniency in prior criminal sentences, and while he clearly stated "[t]here is nothing we can do about it," he went on to say: "But there is one tool. You are asked to say there is something about Mr. Gaff that makes it more likely—likely he is going to do this again[.]" While the subjective intent of the prosecutor may not have been to effectuate further punishment, there is at least a theoretical possibility the argument would be so heard by the jury. The argument was entirely improper.

█ Again, however, the impropriety in the argument could readily have been corrected by an objection and curative instruction. A reminder from the court as to the proper focus and function of the parties and jury would have eliminated any theoretical possibility of misunderstanding. Because no objection was made, the impropriety is waived. *See Hoffman*, 116 Wn.2d at 93.

█ Because this impropriety implicates constitutional principles, we have examined the record to see whether the error can be said to be harmless beyond a reasonable doubt. We are satisfied that even without the curative instruction, the error here did not affect the verdict.

First, the fact that Gaff's counsel did not object suggests that the prosecutor's argument was not heard as an invitation to impose further punishment.

Second, the prosecutor's closing argument comprises more than 20 pages, of which this challenged portion comprises only four paragraphs, most of which was unambiguously proper. For example, references to Gaff's repeated assurances of rehabilitation at past sentencings were based on the evidence and were relevant to Gaff's credibility and the likelihood that he would reoffend. The prosecutor sug-

gested that the commitment procedure would keep the public safe until Gaff proves he has changed.

Third, the real issue at trial was not whether Gaff is a dangerous sexual predator, but whether treatment in the community was a reasonable alternative to secure confinement. The evidence that Gaff, as a sadistic rapist, needed secure confinement for treatment and for community protection was, plainly put, overwhelming.

We note, however, that although in this case we find no reversible error, prosecutors must navigate these waters with care. References to past sentences and the absence of past change are nearly inevitable in a predator proceeding, given the burden allocated to the State. Prosecutors must ensure that the juxtaposition of these arguments does not suggest that the jury "send a message" about failed or lenient past sentences. Prosecutors must also take care not to confuse juries about their function and purpose. But while the argument here was improper, we discern no improper purpose, and no likelihood that the jury's verdict reflects a desire to punish Gaff rather than protect the public.

## Constitutional Challenges

Gaff alleges that Washington's sexual predator statutes facially affront due process and violate constitutional prohibitions of double jeopardy and ex post facto laws. These challenges were rejected in *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 2080, 2085-87, 138 L. Ed. 2d 501 (1997) and *In re Personal Restraint of Young*, 122 Wn.2d 1, 18-26, 857 P.2d 989 (1993).[4]

Gaff also takes the position that the Community Protection Act is unconstitutional as applied to him because

---

[4]The *Hendricks* court evaluated the constitutionality of Kansas's Sexually Violent Predator Act, which was patterned after Washington's. *See Kansas v. Hendricks*, 117 S. Ct. at 2094 (Breyer, J., dissenting); *In re Hendricks*, 259 Kan. 246, 912 P.2d 129, 131 (1996), *rev'd*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997). Gaff has conceded that Washington's statutory scheme is identical to Kansas's for purposes of this appeal.

Wheeler testified that there was no effective treatment for sex offenders such as Gaff. In the absence of effective treatment, Gaff argues his detention is punishment.

 Gaff's argument misstates the record. Wheeler did not testify there was no effective treatment, but only that the research "has been very discouraging about the effectiveness of treat[ing] . . . sadistic rapists[.]" But reversal would not be required even if there were no effective treatment. To protect the public, the State may constitutionally confine dangerous individuals who are suffering from mental illnesses or disorders. The fact that the mental condition is untreatable does not require the release of such individuals. All members of the Supreme Court agreed on that point. *Hendricks*, 117 S. Ct. at 2085-87; *id.* at 2095-96 (Breyer, J., dissenting); *id.* at 2087 (Kennedy, J., concurring). Thus, the alleged futility of Gaff's treatment is irrelevant to the question of punitive intent and does not amount to a double jeopardy or ex post facto violation.

## Instruction on Less Restrictive Alternatives

 Gaff finally argues that the court erred by instructing the jury that it could consider the "feasibility" of treatment settings that were less restrictive than secure confinement. The doctrine of invited error precludes a party from claiming that the trial court erred by submitting an instruction that that party proposed. *See, e.g., State v. Gentry*, 125 Wn.2d 570, 645-47, 888 P.2d 1105, *cert. denied*, 516 U.S. 843, 116 S. Ct. 131, 133 L. Ed. 2d 79 (1995). All parties here agreed to use the feasibility wording that Gaff now challenges. The invited error doctrine therefore precludes review of this issue.[5]

---

[5]We note that there was no error in submitting this instruction in any event. So long as jury instructions correctly state the law and allow each party to argue its case, a trial court is afforded considerable discretion in selecting their wording. *See State v. Brown*, 132 Wn.2d 529, 618, 940 P.2d 546 (1997); *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985); *Young v. Key Pharm., Inc.*, 130 Wn.2d 160, 176, 922 P.2d 59 (1996). In this case, the chief issue at trial was how much supervision was required for Gaff to be safe in community-based treatment. The instruction correctly stated the law here. The instruction placed

Affirmed.

KENNEDY, C.J., and BAKER, J., concur.

the burden on the State to prove beyond a reasonable doubt that no less restrictive alternative to secure confinement would be in Gaff's and other's best interests. The chosen wording in no way lessened this burden. "Feasibility" is commonly understood as something "capable of being done, executed, or effected: possible of realization," or "capable of being managed, utilized or dealt with successfully." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 831 (1976). In a case where the jury finds that no less restrictive alternative is "possible of realization" or of being "dealt with successfully," the State has proven that no less restrictive alternative is in the best interests of the sexual predator or others.