[No. 40710-4-I. Division One. March 15, 1999.]

*In the Matter of the Detention of* SCOTT W. BROOKS,
*Appellant.*

*Nancy E. Horgan* and *David B. Hirsch* of *The Public Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *David J.W. Hackett, Deputy*, for respondent.

ELLINGTON, J. — Scott W. Brooks was committed as a sexually violent predator pursuant to RCW 71.09. He challenges

the constitutionality of the statute, arguing that the 1995 amendments to RCW 71.09 deprive him of equal protection because consideration of less restrictive treatment alternatives for sexually violent predators is allowed only after commitment, whereas RCW 71.05 requires such consideration for the mentally ill before commitment. Mr. Brooks also argues that he was denied due process and equal protection because the State was not required to establish beyond a reasonable doubt that he was highly likely to commit an act of predatory sexual violence in the future. Finally, he claims the evidence was insufficient to support his commitment. We find no constitutional infirmity in the statute as amended, and we find the evidence sufficient to support the determination that Mr. Brooks is a sexually violent predator. Accordingly, we affirm the order of commitment.

## Background

Mr. Brooks was convicted of two counts of indecent liberties in 1977. In 1980, he was convicted of one count of indecent liberties. In 1984, he was convicted of second degree rape. In 1987, he was convicted of indecent liberties and communication with a minor for immoral purposes. While Mr. Brooks was incarcerated for the 1987 offense, the State instituted proceedings to commit him as a sexually violent predator under RCW 71.09. The court entered an order finding probable cause to believe that Mr. Brooks is a sexually violent predator. Mr. Brooks moved to dismiss the petition on constitutional grounds; this motion was denied. The jury returned a unanimous verdict finding that Mr. Brooks is a sexually violent predator, and the trial court entered an order of commitment.

## Discussion

Consideration of less restrictive alternatives

In *In re Personal Restraint of Young*,[1] the Supreme Court held that the statute governing the involuntary commit-

---

[1] *In re Personal Restraint of Young*, 122 Wn.2d 1, 857 P.2d 989 (1993).

ment of sexually violent predators, RCW 71.09, violated the state and federal equal protection clauses because it did not require consideration of less restrictive alternatives to total confinement.[2] The court determined that the statutes governing the commitment of the mentally ill, RCW 71.05, require consideration of less restrictive alternatives, RCW 71.05.240, .320, and without a valid reason for doing so, the State cannot provide different procedural protections for persons confined under RCW 71.09 than are provided for those confined under RCW 71.05.[3] Thus, the court held that the State must consider alternatives to total confinement for persons committed under RCW 71.09.[4] The court did not have occasion to address the issue of when, in the course of the commitment proceedings, such alternatives must be considered.

The legislature amended RCW 71.09 in 1995. The statute as amended allows the court to consider less restrictive alternatives to total confinement of sexually violent predators, although not until after such person has been committed.[5] By contrast, the mental illness commitment statutes require the court to consider less restrictive alternatives prior to ordering commitment.[6] Mr. Brooks argues that this different treatment of persons committed under the two statutes violates his right to equal protection.

■■ In undertaking an equal protection analysis, the first question is the standard under which the legislative classification is properly analyzed. Where a classification implicates physical liberty, and no suspect or semisuspect

---

[2]*Id.* at 47.

[3]*Id.*

[4]*Id.*

[5]RCW 71.09.090.

[6]RCW 71.05.240, .320.

class is involved, rational basis is the proper test.[7] Since sex offenders are neither a suspect nor semisuspect class for purposes of an equal protection analysis,[8] the rational basis test is the proper test to analyze Mr. Brooks' equal protection challenge to RCW 71.09.

■■ Under the rational basis test, a classification is valid if it rests upon a legitimate state objective and is not wholly irrelevant to achieving that objective.[9] The classification must be "purely arbitrary" to overcome the strong presumption of constitutionality.[10] The burden of proof rests with the party challenging the classification.[11]

■ In ascertaining whether a rational relationship exists, we may assume the existence of any necessary state of facts of which we can reasonably conceive.[12] A classification may be held valid based on "rational speculation unsupported by evidence or empirical data."[13]

■ The state's interest in treating sex predators and in

[7]*In re Detention of Dydasco*, 135 Wn.2d 943, 951, 959 P.2d 1111 (1998); *In re Personal Restraint of Stanphill*, 134 Wn.2d 165, 174-75, 949 P.2d 365 (1998); *State v. Manussier*, 129 Wn.2d 652, 673, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997); *State v. Coria*, 120 Wn.2d 156, 171, 839 P.2d 890 (1992). Where the claim of deprivation of liberty is brought under the due process clause, strict scrutiny may be the proper analysis. *See Young*, 122 Wn.2d at 26.

[8]*State v. Ward*, 123 Wn.2d 488, 516, 869 P.2d 1062 (1994).

[9]*Stanphill*, 134 Wn.2d at 175; *Manussier*, 129 Wn.2d at 673.

[10]*State v. Smith*, 117 Wn.2d 263, 279, 814 P.2d 652 (1991).

[11]*Stanphill*, 134 Wn.2d at 175.

[12]*Seeley v. State*, 132 Wn.2d 776, 795, 940 P.2d 604 (1997).

[13]*Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). We reject Brooks' contention that only the legislature, and not the courts, may engage in such speculation. In support of his claim, Brooks cites *Hoppe v. State*, 78 Wn.2d 164, 469 P.2d 909 (1970). That case involved a taxpayer's action for a declaratory judgment that the statute increasing legislators' per diem allowance from $25 to $40 violated CONST. art. XXVIII, § 1, which prohibits increasing or decreasing a state officer's compensation during his or her term of office. The court stated that where a legislative declaration of the basis and necessity for a particular statute appears in the statute, the declaration is deemed conclusive as to the circumstances asserted. *Hoppe* did not involve an equal protection challenge to a statute, nor did it involve application of the rational basis test. The United States Supreme Court in *Heller* directly addressed the appropriate judicial inquiry under the rational basis test in an equal protection analysis, and unequivocally stated that the court may engage in rational speculation.

protecting society from their actions is not only legitimate, it is irrefutably compelling,[14] and there are "good reasons to treat mentally ill people differently than violent sex offenders."[15] For example, sexually violent predators are, in general, considerably more dangerous than are the mentally ill, and treatment methods differ markedly.[16] In enacting RCW 71.09, the legislature found that "the treatment modalities for [sexually violent predators] are very different than the traditional treatment modalities for people appropriate for commitment under the involuntary treatment act."[17] The United States Supreme Court has recognized that increased dangers presented by the dangerously mentally ill may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given.[18]

In the 1995 amendments to RCW 71.09 that added the less restrictive alternative option in compliance with *Young*, the legislature also amended and narrowed the definition of a sexually violent predator. "Sexually violent predator" is now defined as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence *if not confined in a secure facility*."[19] The emphasized language was added by the 1995 amendments.

■ Under the amended definition, only those persons who are likely to reoffend if not confined in a secure facility are classified as sexually violent predators. Thus, it is rational to impose total confinement before undertaking consideration of whether a less restrictive treatment program is a viable option. The greater dangerousness and

---

[14]*Young*, 122 Wn.2d at 26.

[15]*Id.* at 44-45.

[16]*Id.* at 45.

[17]RCW 71.09.010.

[18]*Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966).

[19]RCW 71.09.020(1). (Emphasis added.)

different treatment requirements posed by sexually violent predators provide a rational basis for allowing consideration of less restrictive alternatives only after the person has been confined in a secure facility.

We find, therefore, that treating sexually violent predators differently from persons committed under RCW 71.05 with respect to the time at which less restrictive alternatives may be considered is rationally related to a legitimate government objective and therefore does not deprive those committed under RCW 71.09 of equal protection of the laws.

■ The State filed a motion to supplement the record with information it asserts provides additional grounds for finding a rational basis for the statutory classification regarding less restrictive alternatives. RAP 9.11(a) governs the State's request to supplement. That rule contains six conditions under which new evidence will be received on appeal. Normally, new evidence will be accepted only if all six of these conditions are met.[20] We may, however, waive the requirements of the rule pursuant to RAP 1.2 and 18.8 to serve the ends of justice.[21] The State appears to concede that all six of the conditions are not present, and argues that the interests of justice favor waiving the requirements and accepting the evidence.

The proposed supplemental material includes a declaration of Mark Seling, Ph.D., Superintendent of the Special Commitment Center in Monroe, submitted in a proceeding seeking to commit another individual as a sexually violent predator. Dr. Seling states:

> [I]n order to design an effective less restrictive alternative treatment plan for an individual who has the requisite mental condition and risk that define a sexually violent predator, the individual must spend a period of time in intensive inpatient treatment. This period is necessary to provide both the therapist and the patient with an in depth understanding of

---

[20]*State v. Ziegler,* 114 Wn.2d 533, 541, 789 P.2d 79 (1990).

[21]*Sears v. Grange Ins. Ass'n,* 111 Wn.2d 636, 640, 762 P.2d 1141 (1988).

the individual's offense cycle, as well as attaining other treatment goals. Understanding the offense cycle is necessary for the formulation of any relapse prevention plan which is an essential component of any less restrictive alternative.

The declaration. also explains why many treatment options available to persons committed under RCW 71.05 are not available to sexually violent predators. For instance, Dr. Seling states that the "existing network of community based less restrictive alternative treatment facilities is inappropriate for sexually violent predators because of the security risks posed by that population." He also states that persons committed under RCW 71.05 have major mental illnesses that often can be controlled by psychotropic medications, thus allowing such persons to partake of treatment programs offered in the community rather than in a secure facility. Sexually violent predators, on the other hand, are not effectively treated with psychotropic medications.

Dr. Seling's declaration is cogent and relevant but hardly surprising; the facts he sets forth are well within the arena of this court's ability to conceive.[22] Nonetheless, the declaration provides further assistance to this court's resolution of the significant constitutional questions Mr. Brooks raises, and we thus find that the requirements of RAP 9.11(a) should be waived in the interests of justice, and grant the State's motion to supplement the record to the extent that we consider Dr. Seling's declaration.[23] We note, however, that even without consideration of the supplemental material, there is ample support for our conclusion that the statutory classification does not violate equal protection principles.

Statutory definition of "likely to engage in predatory acts of sexual violence"

■ Under the sexually violent predator statutes, the

[22]See Seeley, 132 Wn.2d at 795.

[23]We find the other proposed supplemental materials, which consist of orders setting forth conditions of community-based treatment in other cases, unhelpful.

trier of fact must determine "whether, beyond a reasonable doubt, the person is a sexually violent predator."[24] A sexually violent predator is defined as a person who has been convicted of or charged with a crime of sexual violence and "who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."[25] "Likely to engage in predatory acts of sexual violence" means "that the person more probably than not will engage in such acts."[26] The combined effect of these provisions is to require the State to prove beyond a reasonable doubt that it is more likely than not that a person will engage in predatory acts of sexual violence unless confined.

Mr. Brooks argues that this standard of proof is constitutionally inadequate because the due process clause requires the State to prove beyond a reasonable doubt that the person is *highly likely* to engage in predatory acts of sexual violence. We disagree.

In *Young*, the Supreme Court noted that the statutory provisions in RCW 71.09 regarding the quantum of proof necessary to commit a sexually violent predator, including the "more probably than not" provision, satisfy due process.[27] In affirming, the court relied upon the expert's conclusion that it was "more likely than not" that Young would commit further sexually violent acts.[28] In *Addington v. Texas*, the United States Supreme Court rejected the argument that due process requires application of the "beyond a reasonable doubt" standard in civil commitment cases.[29] Instead, the Court held that a "middle level" burden of proof applies, variously identified as the "clear and convincing" standard, the "clear, cogent, and convinc-

---

[24]RCW 71.09.060(1).

[25]RCW 71.09.020(1).

[26]RCW 71.09.020(3).

[27]*In re Personal Restraint of Young*, 122 Wn.2d 1, 32 n.9, 857 P.2d 989 (1993).

[28]*Id.* at 15-16.

[29]441 U.S. 418, 428, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979).

ing" standard, or the "clear, unequivocal, and convincing" standard.[30] In *Kansas v. Hendricks*,[31] the Court, in construing a Kansas statute with language nearly identical to ours, found no constitutional infirmity in the statute's use of the term "likely."

Brooks relies in part on *In re Linehan*[32] in support of his argument. The involuntary commitment statute under scrutiny in that case required proof by clear and convincing evidence that the person is likely to engage in harmful sexual conduct. Proof beyond a reasonable doubt was not required. The Minnesota Supreme Court held that the state and federal due process clauses require that future harmful sexual conduct be "highly likely" in order to commit a person under the statute.[33] The Court so held in order to ensure that the clear and convincing evidence standard was met.[34] The decision in *Linehan* has, however, been vacated by the United States Supreme Court for further consideration in light of *Kansas v. Hendricks*.[35] It is also distinguishable. Because Washington requires the higher "beyond a reasonable doubt" standard, the *Linehan* court's concerns are not present here. In light of Washington's stricter standard, the term "likely" can be given its ordinary meaning without the risk of falling below the constitutionally required minimum of clear and convincing evidence. Thus, while "highly likely" may be constitutionally required where the standard of proof is clear and convincing evidence, this is not true where the standard is beyond a reasonable doubt. Requiring the State to prove beyond a reasonable doubt that the person is likely to

---

[30]*Id.* at 431-32.

[31]521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997).

[32]557 N.W.2d 171 (Minn. 1996), *cert. granted, judgment vacated and remanded, Lineham v. Minnesota*, 522 U.S. 1011, 118 S. Ct. 596, 139 L. Ed. 2d 486 (1997).

[33]*Id.* at 180.

[34]*Id.*

[35]522 U.S. 1011, 118 S. Ct. 596, 139 L. Ed. 2d 486 (1997).

engage in predatory acts of sexual violence satisfies the requirements of the due process clause.[36]

■ Mr. Brooks next argues that, under equal protection principles, the degree of dangerousness required under RCW 71.09 must be the same as that required under RCW 71.05, and that lesser proof is required for commitments under RCW 71.09. We disagree with this reading of the statute. A person may be committed under RCW 71.05 if the State demonstrates by a preponderance of the evidence that the person shows a "likelihood of serious harm."[37] This term means a substantial risk that the person will inflict physical harm upon his or her own person, upon another, or upon the property of another. In order to commit a person under RCW 71.09, the State must show beyond a reasonable doubt that the person is likely to commit predatory acts of sexual violence.[38] Proving a substantial risk of harm by a preponderance of the evidence requires less of a showing than proving a likelihood of committing predatory acts of sexual violence beyond a reasonable doubt.

Even if Mr. Brooks were correct and a greater quantum of proof of dangerousness were required for civil commitment, a rational basis exists for distinguishing between those committed under RCW 71.05 and those committed

---

[36]Mr. Brooks' reliance on *In re Harris*, 98 Wn.2d 276, 654 P.2d 109 (1982), is misplaced. Mr. Harris was committed under RCW 71.05, not RCW 71.09. Under the former statute, the court can order involuntary detention for treatment if the required showing is made "by a preponderance of the evidence." RCW 71.05.240. Brooks argues that *Harris* requires, as a constitutional minimum, a showing of a "substantial risk of danger evidenced by a recent overt act" before involuntary commitment can be ordered. The commitment in *Harris* was governed by different statutes than those under which Mr. Brooks was committed and is thus distinguishable. Moreover, proof beyond a reasonable doubt that an individual is "likely to engage in predatory acts of violence" as required by RCW 71.09 provides at least as much constitutional protection as proof by a preponderance of the evidence that an individual poses a substantial risk of danger.

[37]RCW 71.05.240.

[38]RCW 71.09.020(3), .060.

under RCW 71.09.[39] Persons committed under RCW 71.05 pose a risk of harm to themselves, others, or the property of others. Persons committed under RCW 71.09 comprise a more narrowly defined group of persons with antisocial personality features which render them likely to engage not only in sexually violent behavior but also in repeated acts of predatory sexual violence.[40] Those committed under RCW 71.09 pose greater risks of more serious harm than do those committed under RCW 71.05. They also present different types of mental disorders requiring different treatment modalities than do those committed under RCW 71-.05. Such differences in risks of harm, dangerousness, and applicable treatment modalities provide a rational basis for differences in the quantum of proof required under RCW 71.09 as compared with that required under RCW 71.05.

We find no equal protection violation with respect to the degree of dangerousness required under RCW 71.09.

## Sufficiency of the evidence

■■■ Mr. Brooks argues that under *Kansas v. Hendricks*, in order to commit a person as a sexually violent predator, the State must show that the person lacks volitional control. He argues the evidence does not establish that he lacks volitional control, and his commitment should therefore be reversed. His crimes, he claims, were the result of voluntary choice, not uncontrollable impulses, and were therefore properly punished through criminal proceedings.

Mr. Brooks misreads *Kansas v. Hendricks*. The Kansas statute construed in *Hendricks*, like Washington's, requires the existence of a mental abnormality, in addition to criminal history, in order to find that a person is a sexually vio-

---

[39]For the reasons stated above, we apply the rational basis test to analyze Mr. Brooks' challenge and reject his argument that a higher degree of scrutiny is warranted.

[40]*See* RCW 71.09.010.

lent predator.[41] The definition of "mental abnormality" in the Kansas statute is substantially identical to that in Washington's statute.[42] In interpreting the Kansas statute, the Supreme Court found that the statutory requirements limited "involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control."[43] The Court did not require, as Mr. Brooks asserts, a showing of a total lack of control. Rather, the person's mental abnormality or personality disorder must make it "difficult, if not impossible, for the person to control his dangerous behavior."[44]

 ██ Notably, the Court also stated that pedophilia qualifies as a "mental abnormality" under the Kansas statute.[45] Mr. Brooks was diagnosed as a pedophile, which supports the conclusion that he suffers a mental abnormality. Mr. Brooks does not challenge any other aspect of his designation as a sexually violent predator, such as the existence of the requisite criminal history. Thus, the determination that Mr. Brooks suffers a mental abnormality is sufficient to support the determination that he is a sexually violent predator.

Moreover, the State's expert, Dr. Maletzky, testified on numerous occasions as to Mr. Brooks' lack of, or greatly diminished, volitional control. For example, Dr. Maletzky diagnosed Mr. Brooks as a pedophile. He then stated:

> There's some level of volitional control that we think can occur so that even if a person had impulses to molest a young

[41]RCW 71.09.020(2); KAN. STAT. ANN. § 59-29a02(a).

[42]Kansas' statute defines a "mental abnormality" as a "congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." KAN. STAT. ANN. § 59-29a02(b). Washington's statute defines "mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(2).

[43]*Hendricks*, 521 U.S. at 358.

[44]*Id.*

[45]*Id.* at 360.

child, they should be able to act to control those impulses and conform their behavior to the norms of society. When a person can't, we call them a pedophile.

Dr. Maletzky also agreed with the conclusion that Mr. Brooks "has a high sexual drive and poor impulse control."

In addressing the fact that Mr. Brooks exposed himself to a female guard and to a nun while he was incarcerated, Dr. Maletzky stated that these incidents show "that even under tight scrutiny, under tight controls and with the knowledge that he would be detected and reported, he could not control that urge." Dr. Maletzky also testified that these incidents, along with the lack of caution in the commission of his crimes,[46] indicates that Mr. Brooks has "very poor control." The fact that Mr. Brooks reoffended while on release for a prior sexual offense is another indication of lack of sexual impulse control.[47] Thus, even if lack of volitional control is a requirement for commitment under RCW 71.09, there is ample evidence to support the court's order.

Finding no constitutional infirmity in RCW 71.09, and finding the evidence sufficient to support the order of commitment, we affirm the judgment of the trial court.

---

[46]Dr. Maletzky cited as an example of Mr. Brooks' lack of caution the fact that he approached several young girls in the same park for eight days before he approached the girl who finally reported him, and that even after he approached this girl and she ran away, Mr. Brooks was seen talking to females in the same area.

[47]During his testimony, Dr. Maletzky drew a distinction between disorders such as schizophrenia and bipolar disorders on the one hand and paraphilias on the other. He stated that the former disorders are genetic and biochemical abnormalities over which a person has limited control, while paraphilias, although involving brain mechanisms, are under voluntary muscular control. Mr. Brooks relies on this statement as evidence of Dr. Maletzky's opinion that he possesses volitional control. Dr. Maletzky explained, however, that his distinctions were relevant to identifying the types of disorders that are typically treatable with medication and to explaining why Mr. Brooks' condition is not treatable with medication. His statement was not meant to convey the opinion that Mr. Brooks does possess volitional control. Dr. Maletzky's testimony directly addressing the issue of volitional control clearly conveys his opinion to the contrary.

KENNEDY, C.J., and GROSSE, J., concur.

Review granted at 138 Wn.2d 1021 (1999).