6 P.3d 625 (2000)
In re the DETENTION OF Casper ROSS, Appellant.
No. 23523-4-II.
Court of Appeals of Washington, Division 2.
August 18, 2000.
*626 Suzanne Lee Elliott (Court Appointed), Seattle, for Appellant.
W. Stephen Gregorich, Pierce County Deputy Pros. Atty., Tacoma, for Respondent.
*627 ARMSTRONG, C.J.
A jury concluded that Casper William Ross is a sexually violent predator under RCW 71.09. Ross appeals, arguing the trial court erred in (1) not allowing evidence of less restrictive alternative treatment; (2) failing to instruct the jury regarding less restrictive alternative treatment; (3) failing to instruct the jury on the burden of proof; and (4) allowing him to be shackled and fitted with a shock belt during trial. Ross also challenges the sufficiency of the evidence and argues that the Sexually Violent Predator Act (SVPA), RCW 71.09, violates the ex post facto clauses of both the state and federal constitutions. We reverse, holding that the court should have allowed evidence of less restrictive alternative placement.

FACTS
To commit Casper William Ross under the SVPA, the State was required to prove beyond a reasonable doubt that he is a sexually violent predator. RCW 71.09.060(1). "Sexually violent predator" is defined as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(1). "If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent predator, the court shall direct the person's release." RCW 71.09.060(1).
Ross was convicted in 1987 of first degree rape. At his commitment trial, Ross testified to the facts of the rape. He admitted that he abducted and raped a young girl at knifepoint. In treatment, Ross also admitted to committing a total of six rapes.
Before his commitment trial, Ross argued that he should be allowed to present expert testimony "as to what kind of less restrictive alternative would be acceptable to reduce [his] likeliness of reoffending." Ultimately, the court ruled the evidence inadmissible, reasoning that it would confuse the jury because the court did not have authority to grant an alternative placement.[1]
But during an offer of proof, Dr. Brown, a psychotherapist and sexual offense specialist, testified that, if Ross were supervised under strict conditions, he would not be likely to engage in acts of sexual violence. Dr. Brown envisioned court ordered treatment with a community corrections officer or some other person with very tight supervision and monitoring or possibly a group home. And he would require that Ross (1) maintain full time employment with disclosure of his crimes and monitoring by the employer; (2) participate in two years of community-based sex offender treatment, with individual and group therapy and plethysmograph and polygraph monitoring; (3) fully disclose his sexual offender status to the community; and (4) attend two years of intensive alcohol and drug therapy that would include antiabuse monitoring and "UA's."[2]
At trial, two experts testified for the State. Dr. Packard is a licensed psychologist and was previously certified as a sex offender treatment provider when he worked for the Department of Corrections. He concluded that Ross suffers from antisocial personality disorder and that he poses a greater than likely risk of engaging in predatory acts of sexual violence. Both of his conclusions were "rendered by a reasonable psychological certainty." Packard said he was aware of Ross's treatment progress when he conducted the evaluation.
*628 The State also called Dr. Eusanio, a licensed psychologist and the acting director of research and assessment at the Sexual Offender Treatment Center. He diagnosed Ross with antisocial personality disorder, borderline personality disorder, and narcissistic personality disorder. He too concluded, with reasonable psychological certainty, that Ross was at a very high risk to reoffend in acts of predatory sexual violence.
The jury panel was sworn in on May 18, 1998. On May 21, 1998, Ross's attorney advised the court that he had been wearing ankle shackles. Apparently, the Pierce County Jail has a policy in "these types of cases" of keeping the respondent in shackles. Ross's attorneys placed him as far away from the jury as possible and placed a trash can in front of his legs. The trial judge had not noticed the restraints. The trial judge asked one of the corrections officers if there was an alternative. He said the only alternative was a shock belt. Ross agreed that he would prefer the shock belt to having the jury see him in leg shackles.
While testifying, Ross wore the shock belt, which one of his attorneys said was "not too bad .... [s]ince I know what to look for, it's there. But otherwise I'm not sure they would notice that." Ross was seated in the witness box when the jury came in and remained seated until they left the courtroom.

ANALYSIS

A. Less Restrictive Alternatives
Ross argues that the trial court erred in not allowing the jury to hear evidence of less restrictive, alternative treatment options. We agree.
A "[s]exually violent predator" is a "person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(1). Before 1995, this definition did not contain the final phrase "if not confined to a secure facility." See Laws of 1995, ch. 216, § 1. The definition was changed in response to the State Supreme Court's decision in In re Personal Restraint Petition of Young, 122 Wash.2d 1, 857 P.2d 989 (1993).
In Young, the court held that RCW 71.09 violated equal protection because the statute did not require consideration of less restrictive alternatives to confinement. Young, 122 Wash.2d at 47, 857 P.2d 989. The statute was compared to the mental health, civil commitment statute under RCW 71.05, which requires consideration of less restrictive alternatives. Young, 122 Wash.2d at 47, 857 P.2d 989 (citing RCW 71.05.240, .320). The Young court said it was necessary to consider alternatives because "[n]ot all sex predators present the same level of danger, nor do they require identical treatment conditions." Young, 122 Wash.2d at 47, 857 P.2d 989. The court remanded Young's case to the trier of fact to determine whether less restrictive alternatives were appropriate. Young, 122 Wash.2d at 47, 857 P.2d 989.
After Young, the Legislature amended the definition of sexually violent predator, as stated above, and added new provisions that allow for consideration of less restrictive alternatives after a person has been committed as a sexually violent predator. See Laws of 1995, ch. 216, § 9. In In re Detention of Brooks, 94 Wash.App. 716, 719-24, 973 P.2d 486, review granted, 138 Wash.2d 1021, 989 P.2d 1136 (1999), Division One upheld the 1995 amendments against another equal protection challenge. Brooks challenged the statute because, unlike the mental health statutes,[3] it allowed consideration of less restrictive alternatives after commitment but not before. See RCW 71.09.090. The Brooks court found a rational basis for treating sexual predators differently because "[u]nder the amended definition, only those persons who are likely to reoffend if not confined in a secure facility are classified as sexually violent predators." Brooks, 94 Wash.App. at 722, 973 P.2d 486. Furthermore, sexual predators have different treatment requirements and present a greater danger to society. Brooks, 94 Wash.App. at 722-23, 973 P.2d 486.
*629 The State relies on Brooks, arguing that less restrictive alternatives need not be considered until after a person is committed as a sexually violent predator. The State misconstrues Ross's argument. Ross does not bring an equal protection challenge. Instead, he argues that evidence of an alternative treatment plan is admissible to rebut the State's evidence that he is "likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(1).
But the State also contends that this evidence is irrelevant because the amended definition of sexually violent predator removes from consideration those individuals who are not likely to engage in predatory acts if released into the community. This argument also misses the mark. The State must prove, beyond a reasonable doubt, that the person is a sexually violent predator. And, sexually violent predator is defined, in part, as a "person likely to engage in predatory acts ... if not confined in a secure facility." RCW 71.09.020(1). Thus, if Ross can show that he is unlikely to engage in predatory acts if treated in the community, he has created reasonable doubt that he must be confined to a secure facility.
In In re Detention of Gaff, 90 Wash.App. 834, 845 n. 5, 954 P.2d 943 (1998), Division One noted that the trial court did not err in giving an instruction on less restrictive alternatives. The jury, in Gaff, was instructed that "it could consider the `feasibility' of treatment settings that were less restrictive than secure confinement." Gaff, 90 Wash. App. at 845, 954 P.2d 943. Gaff agreed to the instruction at trial but challenged it on appeal. Division One declined to review the issue under the doctrine of invited error. Gaff, 90 Wash.App. at 845, 954 P.2d 943. But in a footnote, the court said:
We note that there was no error in submitting this instruction in any event.... In this case, the chief issue at trial was how much supervision was required for Gaff to be safe in community-based treatment. The instruction correctly stated the law here. The instruction placed the burden on the State to prove beyond a reasonable doubt that no less restrictive alternative to secure confinement would be in Gaff's and other's best interests.... In a case, where the jury finds that no less restrictive alternative is "possible of realization" or of being "dealt with successfully," the State has proven that no less restrictive alternative is in the best interests of the sexual predator or others.
Gaff, 90 Wash.App. at 845-46 n. 5, 954 P.2d 943.
The State argues that Gaff does not apply because it construes the pre-1995 version of RCW 71.09 and "the 1995 legislation and narrowing definition of `sexually violent predator' would not demand a similar finding today." But in Gaff, Division One said, "A jury found that Mitchell Gaff was a sexually violent predator who was likely to reoffend if not placed in a secure setting." Gaff, 90 Wash.App. at 837, 954 P.2d 943 (emphasis added). The use of the emphasized language suggests that the Gaff court was construing the post-1995 version of the statute.
In addition, the State's position is inconsistent with the language in In re Detention of Turay, 139 Wash.2d 379, 986 P.2d 790 (1999), petition for cert. filed, 68 U.S.L.W. 3615 (U.S. Mar. 21, 2000) (No. 99-1548). There, the court quoted a trial court ruling at length that denied the State's motion to exclude evidence of whether there were less restrictive alternatives to total confinement. Although this part of the motion was not at issue on appeal, the court quoted the trial court's statement that "it is the respondent's right to challenge whether or not the State has met its burden of proving that no less restrictive alternatives are appropriate.... So the motion to exclude that type of evidence would be denied." Turay, 139 Wash.2d at 403 n. 17, 986 P.2d 790.
Here, the trial court's concern was that it lacked authority to order alternative treatment and that the jury would only be confused by the evidence. Under ER 403, the court has discretion to exclude relevant evidence if its probative value is substantially outweighed by its potential to confuse or mislead the jury. State v. Brenner, 53 Wash. App. 367, 379-80, 768 P.2d 509 (1989); see ER 403. But "ER 403 does not extend to *630 the exclusion of crucial evidence relevant to the central contention of a valid defense." State v. Young, 48 Wash.App. 406, 413, 739 P.2d 1170 (1987); see 5 KARL B. TEGLAND, WASHINGTON PRACTICE § 105 (1989).
The possibility of alternative treatment was central to Ross's defense against secure confinement. Although some of Dr. Brown's testimony came before the jury, Ross was not allowed to argue this evidence in closing. The significant testimony in the offer of proof was that, with court-ordered monitoring of the treatment recommendations, Ross could be effectively treated in the community. What the jury heard instead was that, if Ross voluntarily submitted to monitoring and followed through with the recommendations, he could be treated in the community. Because the trial court excluded relevant evidence that was crucial to rebut the State's allegations, the trial court abused its discretion. See Young, 48 Wash.App. at 413, 739 P.2d 1170. We, therefore, reverse on this issue.

B. Use of Shackles and Shock Belt
Ross argues that he should be granted a new trial because he was required to wear either shackles or a shock belt at trial. The State agrees that the trial court abused its discretion but argues that the error is harmless. Because the issue could arise upon retrial, we briefly discuss it. And, because the State concedes that the rules concerning physical restraint of a criminal defendant apply to Ross, we do not decide the issue of whether the rules applicable to the restraint of criminal defendants apply to civil commitment procedures generally.
In a criminal trial, it is well established that the defendant "is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances" to ensure that the accused receives a fair and impartial trial under the state and federal constitutions. State v. Finch, 137 Wash.2d 792, 842-43, 975 P.2d 967, cert. denied, ___ U.S. ___, 120 S.Ct. 285, 145 L.Ed.2d 239 (1999) (citations omitted). Restraining the defendant may interfere with the right to a fair trial by (1) impairing the presumption of innocence; (2) suggesting that the accused is particularly dangerous and prejudicing the jury against him; (3) interfering with the defendant's ability to assist trial counsel; (4) interfering with the right to testify on one's own behalf; and (5) offending the dignity of the judicial process. Finch, 137 Wash.2d at 844-45, 975 P.2d 967.
The court has discretion to determine the security measures necessary to maintain order in the courtroom, but the factual basis for that determination must be stated on the record. Finch, 137 Wash.2d at 846, 975 P.2d 967 (quoting State v. Hartzog, 96 Wash.2d 383, 400, 635 P.2d 694 (1981)). Restraints may "be used only when necessary to prevent injury to those in the courtroom, to prevent disorderly conduct at trial, or to prevent an escape." Finch, 137 Wash.2d at 846, 975 P.2d 967 (quoting Hartzog, 96 Wash.2d at 398, 635 P.2d 694). And physical restraints should be used only as a "`last resort.'" Finch, 137 Wash.2d at 850, 975 P.2d 967 (quoting Illinois v. Allen, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)). There must be a showing of "`manifest need'" for the restraint. Finch, 137 Wash.2d at 849, 975 P.2d 967. "A broad general policy of imposing physical restraints upon prison inmates charged with new offenses because they may be `potentially dangerous' is a failure to exercise discretion." Hartzog, 96 Wash.2d at 400, 635 P.2d 694. Similarly, relying solely on the recommendations of corrections officers, without a justifiable basis for restraint in the record, constitutes an abuse of discretion. Finch, 137 Wash.2d at 853, 975 P.2d 967.
Here, the trial court erred in deferring to the general policy and suggestions of the corrections officers. See State v. Flieger, 91 Wash.App. 236, 241-42, 955 P.2d 872 (1998) (trial court abused its discretion in deferring to sheriff's office on use of shock box), review denied, 137 Wash.2d 1003, 972 P.2d 466 (1999). The State did not show that Ross was disruptive or threatened injury or escape. Therefore, there was no showing of manifest need for restraint.

C. Sufficiency of the Evidence
Ross argues that the evidence is insufficient to support the verdict that he is likely *631 to engage in predatory acts of sexual violence if not confined to a secure facility. We also address this issue because it is likely to arise in the second trial. Ross argues that the State's expert testimony is flawed because (1) neither expert took into account his successful completion of treatment at Twin Rivers Corrections Center and (2) both relied on actuarial assessment tools that are not designed to predict the likelihood of future sexual violence.
In a criminal case, evidence is sufficient to support a criminal conviction if, when viewed in the light most favorable to the State, "`any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Myles, 127 Wash.2d 807, 816, 903 P.2d 979 (1995) (quoting State v. Joy, 121 Wash.2d 333, 338, 851 P.2d 654 (1993)). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992) (citation omitted). Because the Legislature has adopted the beyond a reasonable doubt standard for commitments under the SVPA, RCW 71.09.060(1), we test the sufficiency of the evidence against this standard. We, therefore, determine whether the evidence, when viewed in the light most favorable to the State, is sufficient, beyond a reasonable doubt, to support a judgment of commitment.
Ross argues that the State's experts failed to take into account his treatment at Twin Rivers. The evidence does not support this assertion. The evidence shows that both experts were aware of his completion of the treatment program. Dr. Eusanio specifically stated that completion of treatment did not change his opinion because someone with Ross's personality disorder would be unlikely to change his behavior after six months of treatment.
Ross also contends that the actuarial assessment tools relied on by Dr. Packard and Dr. Eusanio are not designed to assess future, dangerous sexual behavior. This assertion is based on a partial statement of the facts. Dr. Packard said that the risk assessment tools have not been validated specifically with Washington State sex offenders and that these tests should not be viewed as conclusive. But, he also said that actuarially based risk assessment tools are superior to clinical predictions of future dangerousness. Viewed in the light most favorable to the State, the evidence would be sufficient to support commitment beyond a reasonable doubt.

D. Ex Post Facto
Ross argues that the SVPA violates the ex post facto clauses of both the state and federal constitutions. Ross recognizes that the State Supreme Court held that the SVPA is a civil law and, therefore, does not violate the ex post facto clause. Young, 122 Wash.2d at 18, 857 P.2d 989. But he argues that the treatment conditions at the special commitment center make the SVPA punitive. He relies on the findings in Federal District Court that treatment at the special commitment center does not meet constitutional standards.
The State Supreme Court recently rejected this argument in In re Detention of Campbell, 139 Wash.2d 341, 986 P.2d 771 (1999), petition for cert. filed, ___ U.S.L.W. ___ (U.S. Mar. 13, 2000) (No. 99-8629). The court rejected the argument that "flawed administration [of a statute] renders the statute itself unconstitutional." Campbell, 139 Wash.2d at 348, 986 P.2d 771. In reviewing the constitutionality of a statute, the court looks at the statute on its face not as applied to a particular individual. Campbell, 139 Wash.2d at 348, 986 P.2d 771. And, when a person brings an as applied challenge to the conditions of confinement, "the question is not simply whether the conditions of confinement are constitutionally inadequate in certain respects, but whether these constitutional infirmities transform [the petitioner's] civil detention into `punishment,' thereby rendering the statute `criminal' as applied." Campbell, 139 Wash.2d at 349, 986 P.2d 771. Here, we have no showing that the conditions of confinement, as applied to Ross, transform his civil detention into punishment. And, more importantly, because we are remanding for new trial, Ross cannot challenge the conditions of confinement *632 as applied to him unless and until he is found to be a sexually violent predator and committed under RCW 71.09. See In re Detention of McClatchey, 133 Wash.2d 1, 5, 940 P.2d 646 (1997).
Reversed and remanded for new trial.
HOUGHTON, J., and BRIDGEWATER, J., concur.
NOTES
[1] The court cannot order treatment in a less restrictive alternative because RCW 71.09.060(1) requires release of the person if the jury is not satisfied, beyond a reasonable doubt, that the person must be confined to a secure facility. See RCW 71.09.020(1), .060(1). Although the statute provides for the consideration of less restrictive alternatives and conditional release, these procedures occur after a person has been committed. See RCW 71.09.090. Under the SVPA, "[l]ess restrictive alternative" is defined as "court-ordered treatment in a setting less restrictive than total confinement." RCW 71.09.020(7).
[2] Some of Dr. Brown's opinions regarding alternative treatment were subsequently stated in front of the jury. But not all of his opinions were presented to the jury and counsel was prevented from arguing the evidence of alternative treatment in closing argument.
[3] RCW 71.05.240, .320.