IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| UMPQUA BANK, | ) | |
| | ) | No. 37400-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| CHARLES A. GUNZEL, III, and GINELLE | ) | |
| F. GUNZEL, husband and wife, | ) | |
| | ) | |
| Appellants. | ) | |
| | ) | |

FEARING, J. — This is our second published opinion in this appeal. In our first opinion, we ruled that the Oregon statute of limitations barred Umpqua Bank's suit against Charles Gunzel on his guaranty of a hefty debt owed by the borrower Cornerstone Building Company. *Umpqua Bank v. Gunzel*, 16 Wn. App. 2d 795, 483 P.3d 796 (2021).

Umpqua Bank seeks reconsideration of our opinion based on new evidence and fraud. Along with its motion for reconsideration, the bank moves this court to

supplement the evidentiary record. We elect, pursuant to RAP 17.6(b), to resolve the two related motions with an opinion.

Based on a newly produced record that shows one or more payments to the bank by guarantor Charles Gunzel personally, rather than the debtor corporation, Cornerstone Building Company, Umpqua Bank now asserts that Gunzel prevaricated in a declaration opposing the bank's summary judgment motion. Umpqua Bank also contends that Gunzel's personal payments extended the accrual of the statute of limitations. In turn, Umpqua Bank requests that we reverse our ruling in favor of Charles Gunzel because Gunzel perjured himself in his declaration and because this court decided the appeal on the basis that Gunzel tendered no personal payments when the parties did not litigate this factual question. Umpqua Bank asks that we grant it judgment against Gunzel.

We exercise our discretion to deny Umpqua Bank's motion to supplement the record because the bank did not seek to enhance the factual record until after the issuance of the court's opinion, because the bank should have produced the relevant document in response to a discovery request, and because the equities do not favor the bank. We deny the motion for reconsideration because we decline to review new evidence and because this court based its earlier decision on an issue litigated by the parties.

FACTS

We refer the reader to our first opinion for most of the underlying facts behind the suit by Umpqua Bank against Charles Gunzel. *Umpqua Bank v. Gunzel*, 16 Wn. App. 2d

2

795 (2021).  We briefly recap those facts.

On June 27, 2007, Cornerstone Building, Co., a corporation, borrowed $200,000 from Umpqua Bank.  The maturity date for the entire debt, under the promissory note signed by Cornerstone, was May 28, 2009.  Charles Gunzel, the president of Cornerstone, executed a commercial guaranty, under which Gunzel guaranteed Cornerstone's payment of the $200,000 indebtedness to Umpqua Bank.  The guaranty addressed the statute of limitations for any claim on the guaranty and read in part:

> Guarantor also waives any and all rights or defenses based on suretyship . . . but not limited to, any rights or defenses arising by reason of . . . any statute of limitations, *if at any time* any action or suit brought by Lender against Guarantor is commenced, *there is outstanding Indebtedness which is not barred by any applicable statute of limitations*.

Clerk's Papers (CP) at 71 (emphasis added).  The guaranty read that Oregon law controlled the parties' relationship.

On May 28, 2009, the maturity date of the promissory note, Cornerstone defaulted on its obligations by failing to pay the note in full.  Nevertheless, according to the record on summary judgment, the corporation periodically made late payments on the loan until December 16, 2013.

## PROCEDURE

The relevant facts behind this second ruling are the procedures in the superior court during the summary judgment motion process and the procedures in this appellate court since we issued our ruling.  On March 28, 2019, Umpqua Bank filed suit against

Charles Gunzel on his personal guaranty. Gunzel raised the defense of the statute of limitations and contended that the statute commenced to run on the default by debtor Cornerstone Building on May 28, 2009. Umpqua argued that the statute of limitations did not begin to run until the last late payment on December 16, 2013.

On May 21, 2019, Gunzel propounded interrogatories and requests for production to Umpqua Bank. Among other documents requested, Gunzel sought the following:

> REQUEST FOR PRODUCTION NO. 2: Please provide copies of all records showing payments on the obligation and the balance owing after each such payment.

CP at 22. Umpqua Bank produced only one document in response, an "Umpqua Bank Loan Accounting System Note Transcript Statement." CP at 77. Umpqua Bank employee, Lisa Redcay, signed and verified the bank's document response.

Charles Gunzel's counsel thereafter identified for Umpqua Bank its deficiencies in the production of documents. Counsel emphasized that the bank had failed to provide the Cornerstone promissory note in response to one of the other requests for records. Counsel for Umpqua did not respond. Gunzel sent a second set of requests for production that requested, in part, a copy of all loan documents. On July 11, 2019, Umpqua merely repeated its response to the earlier request for documents. The bank once again failed to produce the promissory note. Umpqua Bank failed to verify its second response to the request for production of documents.

Charles Gunzel scheduled, pursuant to CR 30(b)(6), a corporate deposition of Umpqua Bank. The notice of deposition designated the answers to Gunzel's discovery requests as one of the topics for questioning during the deposition scheduled for December 20, 2019. Umpqua failed to produce a witness for the deposition. The superior court imposed discovery sanctions on Umpqua and its counsel for the nonappearance.

Charles Gunzel moved for summary judgment dismissal of the suit on the basis of the statute of limitations. He argued that, under Oregon law: (1) the statute of limitations on a personal guaranty is independent from any underlying obligation, (2) the six-year statute of limitations accrued on May 28, 2009, when Cornerstone's loan matured without full payment and he thereby became obligated to pay the debt, (3) Cornerstone's periodic payments thereafter did not recommence the running of the statute of limitations against him since he remained in default under his guaranty, (4) the waiver of the statute of limitations defense under his guaranty agreement with Umpqua Bank violated public policy, and (5) the statute of limitations barred Umpqua's suit because the bank sued after May 28, 2015. Note that Gunzel framed the issues as if Cornerstone, not he personally, tendered the late payments.

In his brief in support of his motion for summary judgment, Charles Gunzel wrote: "[t]hereafter, Cornerstone Building Co. continued to make payments through December 16, 2013." CP at 7. Gunzel based this factual assertion on Umpqua's responses to

5

discovery that showed the bank applied payments only to the promissory note and Cornerstone Building's matching loan account number 124790 as opposed to Gunzel's personal guaranty account number 525164.

In response to Charles Gunzel's summary judgment motion, Umpqua Bank contended that both parties agreed no material factual disputes existed. The bank wrote four times, in its opposing memorandum of authorities, that, after Cornerstone Building's default, Gunzel, as president of the corporation, continued to direct Cornerstone to make payments to Umpqua Bank until December 2013. The bank did not cite the record for its factual allegation that Gunzel directed Cornerstone to issue payments. The bank, in its summary judgment motion response, did not suggest that Gunzel personally made a payment.

In opposition to Charles Gunzel's summary judgment motion, Lisa Redcay, assistant vice president and special assets officer in the Special Assets Department of Umpqua Bank, submitted a declaration. She did not claim in the declaration that Charles Gunzel personally tendered a payment to the bank.

As part of its response to Charles Gunzel's summary judgment motion, Umpqua Bank asked the court to "sua sponte" grant it summary judgment against Gunzel. Gunzel asked the court for a postponement of the bank's motion so he could have more time to respond. The trial court denied Charles Gunzel's motion and the bank's sua sponte motion.

Umpqua Bank thereafter moved again for summary judgment. In opposition to the bank's motion, Charles Gunzel submitted a declaration that read, in part:

I did not consent to the extension of the debt evidenced by loan number 3468648478 owed by Cornerstone Building Company to Umpqua Bank beyond the maturity date of May 28, 2009. *Cornerstone Building Company continued to make payments* on loan number 3468648478 until December of 2013.

CP at 220 (emphasis added).

In response to Charles Gunzel's declaration and brief opposing the bank's motion, Umpqua Bank filed a reply brief. In the reply brief, the bank, in support of its attempt to impose personal liability on Gunzel and without any citation to the record, wrote that: "Mr. Gunzel . . . was the actual person responsible for continuing to make payments to Umpqua after the debt became due and owing." CP at 226. The bank later wrote, in its reply brief: "Umpqua merely notes that *Gunzel's payments* after the debt became due and owing extended the statute of limitations of the debt [under the guaranty] as this court has already found as a matter of law." CP at 226-27 (emphasis added). The statement lacked any citation to the record to show that Gunzel personally made a payment or that the trial court earlier issued a finding as a matter of law.

The trial court granted Umpqua Bank's summary judgment motion and entered judgment in the bank's favor in the amount of $265,045.99.

Charles Gunzel appealed to this court. In Gunzel's opening brief on appeal, he wrote, with regard to payments after Cornerstone Building's default: "While Cornerstone

7

continued to make payments on the note until 2013, no payments were made by Gunzel

in regard to the Guaranty Agreement. CP 75-81; CP 220." Appellant's Br. at 4. CP at

75-81 is the Umpqua Bank Loan Accounting System Note Transcript Statement, the only

document produced by the bank in discovery. The note transcript statement lists

Cornerstone Building as the borrower and Charles Gunzel as a guarantor. The statement

records payments on the loan, but does not identify the payor. CP 220 is the first page of

Charles Gunzel's declaration that declares, in part: "Cornerstone Building Company

continued to make payments on loan number 3468648478 [after the maturity date] until

December of 2013."

In its respondent's appellate brief, Umpqua Bank identified issue 1 on appeal as:

> Whether the trial court correctly concluded that *Gunzel's continued payments* on the Note after its maturity date extended the statute of limitations on its corresponding personal guaranty in accordance with Oregon law?

Resp't's Br. at i, 3 (emphasis added). In its brief's introduction, Umpqua Bank wrote:

> While the Note became fully due and payable in 2009, it remained unpaid, *Gunzel continued to make payments* in partial satisfaction of the company's obligations on the Note (and his own personal obligations on the guaranty) until 2013. Doing so forestalled Umpqua's collection actions on both the Note and the personal guaranty.

Resp't's Br. at 1 (emphasis added).

> To be sure, *Gunzel* made a calculated and conscience choice to continue making payments on the Note even after its maturity.

8

Resp't's Br. at 2 (emphasis added). The statements in the Umpqua Bank's brief's introduction contained no citations to the superior court record. In the brief's argument, Umpqua Bank contended: "Instead, Umpqua merely notes that *Gunzel's payments* after the debt became due and owing extended the statute of limitations of the debt not the date of maturity." Resp't's Br. at 15.

In his reply brief, Charles Gunzel emphasized that Umpqua Bank asserted facts in its brief, which facts lacked support in the record. Gunzel highlighted the two quotes above from pages 1 and 2 of the bank's brief.

On appeal, this court posed four discrete questions and answered the questions as follows. Question one: under Oregon law, when does the statute of limitations begin to accrue on the obligation of the guarantor of a loan when the underlying debtor defaults but later tenders payments, but in the meantime the guarantor tenders no payments? Answer: at the time the underlying debtor first defaults on the loan. Question two: did the commercial guaranty between Umpqua Bank and Charles Gunzel alter the date of the accrual of the Oregon statute of limitations? Answer: yes, the commercial guaranty read that the statute of limitations would not run on the claim against Charles Gunzel unless the statute had run on the claim against Cornerstone Building. Question three: if the answer to question two is yes, was that alteration in the form of a waiver? Answer three: yes, the alteration was in the form of an advance waiver. Question four: did Oregon

9

public policy prohibit the commercial guaranty from an advance waiver of the accrual

date of the statute of limitations? Answer: yes.

In our opinion's recital of facts, we wrote:

> In its brief, Umpqua Bank repeatedly claims that Charles Gunzel
> personally made the payments after May 28, 2009. Nevertheless, it cites to
> no portion of the record to support this factual allegation. The records
> provided by Umpqua Bank indicate that payment was applied to
> Cornerstone's debt and does not specify any payment from Gunzel. . . . In
> a declaration, Charles Gunzel avers that Cornerstone, not he, tendered the
> late payments to Umpqua Bank. Umpqua Bank does not controvert this
> testimony.

*Umpqua Bank v. Gunzel*, 16 Wn. App. 2d 795, 799-800 (2021). As part of this court's

ruling, we wrote:

> We acknowledge that, when the guarantor approves or ratifies the
> late part payment by the primary debtor, the statute of limitations will be
> revived as to the guarantor as well. *Corona v. Corona*, 2014-NMCA-071,
> 329 P.3d 701, 709 (2014); *PNL Asset Management Co. v. Brendgen &
> Taylor Partnership*, 193 Ariz. 126, 970 P.2d 958, 964 (Ct. App. 1998). We
> recognize that Charles Gunzel was the president and owner of Cornerstone.
> Nevertheless, in response to Gunzel's summary judgment motion, Umpqua
> Bank provided no facts as to the role that Gunzel played in the part
> payments, let alone any authorization or ratification of the payments by
> Gunzel. Umpqua Bank does not argue ratification.

*Umpqua Bank v. Gunzel*, 16 Wn. App. 2d 795, 805 (2021).

After release of our decision, Umpqua Bank moved the court for reconsideration

and to supplement the record to consider evidence contained in a new declaration of Lisa

Redcay. Redcay's declaration reads, in part:

10

3. In reviewing the recent published opinion on this Court relative to this dispute, the Court incorrectly presumed that Mr. Gunzel was either unaware and/or uninvolved in the last several payments made on the Cornerstone notes, namely payments in July, September, November and December of 2013. Not only is this an incorrect assumption, but each of these payments was actually made by Mr. Gunzel, personally, and directed to the bank to apply to the Cornerstone loan number (3468648478).

4. As this is an older debt, all hardcopies and original loan documentation are stored at Iron Mountain for the bank. After reading this Court's opinion and mistaken belief that Mr. Gunzel was claiming he did not make the 2013 payments, I searched the bank's files and found copies of these four checks below:

[The declaration then shows four checks written on a Wells Fargo bank account of Charles Gunzel III each in the amount of $200. The checks are dated July 31, 2013, September 10, 2013, November 6, 2013, and December 9, 2013].

5. Not only was Mr. Gunzel aware of these payments, he was the one that made them from his own personal account. Thus the statement this Court was relying on from him that somehow it was Cornerstone making these payments is simply a lie. During the bank's motion for summary judgment before the trial, who was making these 2013 payments was never pertinent to the arguments being made by either party thus the bank had no reason to search these older files for such information.

Resp't Umpqua Bank's Mot. for Recons. And to Suppl. the R., App. A at 2-3.

In her declaration, Lisa Redcay did not identify the location of Iron Mountain.

Iron Mountain, Inc. is an American enterprise information management services

company founded in 1951 and headquartered in Boston. Redcay skirted any explanation

as to why Umpqua Bank failed to produce the checks during trial court discovery.

LAW AND ANALYSIS

In its motion for reconsideration, Umpqua Bank asks that we reverse and grant it

judgment against Charles Gunzel based on new evidence that Gunzel tendered late

payments and that Gunzel committed perjury. The bank also complains that we addressed an issue not litigated. As alluded to in our first opinion, we would have affirmed the superior court's judgment in favor of the bank if the bank had presented facts supporting its assertions about Gunzel's conduct and Gunzel had failed to sufficiently controvert those facts on summary judgment.

In support of its motion for reconsideration, Umpqua Bank also files a motion, pursuant to RAP 9.11, to submit additional evidence. We first address whether to grant the bank's motion to supplement the record before analyzing whether the court mistakenly decided the case on a spurious issue.

Perjury and Motion to Supplement the Record

Umpqua Bank requests that this court, pursuant to RAP 9.11(a), consider the declaration of Lisa Redcay, including the affixed checks showing payments by Charles Gunzel. RAP 9.11 declares:

> **(a) Remedy Limited.** The appellate court may direct that additional evidence on the merits of the case *be taken before the decision of a case on review* if: (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) *it is equitable to excuse a party's failure to present the evidence to the trial court*, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

(Emphasis added.)

We emphasize that RAP 9.11(a) authorizes additional evidence on appeal only before the appeals court renders its decision. We deny the motion to supplement on this basis alone. No Washington decision presents circumstances whereby a party sought to furnish the appellate court new evidence after the court's decision.

RAP 9.11 presents a limited remedy. *Harbison v. Garden Valley Outfitters, Inc.*, 69 Wn. App. 590, 593, 849 P.2d 669 (1993). RAP 9.11(a) contains six conditions under which new evidence will be received on appeal. Normally, new evidence will be accepted only if the movant fulfills all six of these conditions. *State v. Ziegler*, 114 Wn.2d 533, 541, 789 P.2d 79 (1990); *Harbison v. Garden Valley Outfitters, Inc.*, 69 Wn. App. 590, 593 (1993).

Even if we were to permit the late, late filing of the request to supplement the record, we would deny the motion because Umpqua Bank fails to satisfy condition three of the six conditions under RAP 9.11. The bank lacks any excuse for its failure to present the additional evidence before the trial court, let alone present the records timely before this reviewing court. In a declaration in support of his summary judgment motion and in his brief in support of summary judgment, Gunzel wrote that Cornerstone Building tendered all the late payments. In its summary judgment briefs, the bank wrote that Gunzel tendered the late payments. Because Gunzel presented evidence contrary to the facts asserted by Umpqua Bank and because the bank relied on this purported fact for its

13

summary judgment motion, it should have produced the evidence by the time of the summary judgment hearings.

In his reply brief before this court, Charles Gunzel criticized Umpqua Bank for asserting in its appellate brief that Gunzel tendered payment to the bank when the bank failed to present any evidence to support this assertion. The bank should have earlier known of the factual dispute of who tendered payments, so, by the time of the reply brief, the bank lacked any semblance of an excuse not to seek to add evidence before this court's ruling. The bank instead buried its head in the sand, which apparently it also did when responding to discovery requests.

Umpqua Bank lacks clean hands in seeking to supplement the record. The bank should have disclosed the checks written by Charles Gunzel during discovery. By failing to produce the records, the bank flouted important court rules, on which fair and orderly litigation is based. Lisa Redcay verified under oath that the bank had produced all requested documents. In her recently submitted declaration, Redcay fails to explain the violation of the discovery rules and does not even recognize the document having been sought during discovery.

Umpqua Bank asks us to waive the conditions to RAP 9.11(a). We recognize that we may waive the requirements of RAP 9.11 to serve the ends of justice. *Sears v. Grange Insurance Association*, 111 Wn.2d 636, 640, 762 P.2d 1141 (1988), *overruled in part on other grounds by Butzburger v. Foster*, 151 Wn.2d 396, 89 P.3d 689 (2004)

(plurality opinion); *Washington Federation of State Employees, Council 28, AFL-CIO v. State*, 99 Wn.2d 878, 885, 665 P.2d 1337(1983); *In re Detention of Brooks*, 94 Wn. App. 716, 723, 973 P.2d 486 (1999), *aff'd in part, rev'd in part*, 145 Wn.2d 275, 36 P.3d 1034 (2001), *overruled in part on other grounds by In re Detention of Thorell*, 149 Wn.2d 724, 72 P.3d 708 (2003).

In *Washington Federation of State Employees Council 28, AFL-CIO v. State*, 99 Wn.2d 878 (1983), the Supreme Court granted a motion for submittal of additional evidence because the State officer created the new document after the initiation of litigation, because the document solved the problem raised by the plaintiff in litigation, and because of a question from the court in anticipation of oral argument.

In *Detention of Brooks*, 94 Wn. App. 716 (1999), this court granted the State's motion to supplement the record, before its decision. In a sexually violent offender prosecution's appeal, in which the appellant contended the relevant statute violated the equal protection clause, the State asked to file a declaration of the superintendent of the Special Commitment Center in Monroe with facts and opinions about treating a sexually violent person. This court noted that the facts were "well within the arena of this court's ability to conceive" when addressing the important constitutional issue. 94 Wn. App. 716, 724 (1999).

We decline to waive the requirement that the movant seek to introduce additional evidence before the court's decision. None of the Washington decisions addressing

waiver involve a request to supplement the record after the appellate court's decision.

We also decline waiver of all six of the conditions under RAP 9.11(a) because of the

unclean hands of Umpqua Bank and because of fair warning to the bank before the trial

court and before this court of the need to support its factual assertion, of payments by

Charles Gunzel, with payment records.

Because we deny Umpqua Bank's motion to supplement the record, we do not

consider the declaration of Lisa Redcay in support of the bank's motion for

reconsideration. Therefore, this court lacks evidence of any perjury by Charles Gunzel.

Un-Litigated, Un-Developed Issue

Umpqua Bank remonstrates that this court based its decision on an issue not

litigated before the superior court. The bank suggests that this court violated the bank's

due process rights by resting its decision in part on the assumption that Cornerstone

Building, not Charles Gunzel, tendered all late payments. In so arguing, Umpqua Bank

cites fundamental principles of law with little relevance to the steps taken by this court to

reach its ruling. In so arguing, Umpqua Bank fails to note that the parties' superior court

pleadings and the parties' appeal briefs repeatedly disagreed as to whether Gunzel

personally tendered payments to the bank.

In support of its objection to this court's ruling, Umpqua Bank asserts arguments

that misrepresent or misconstrue the record before the trial court and before this court.

First, the bank laments the lack of a complete record before the trial court. Yet, the bank

fails to identify what additional record should have been placed before the trial court and who should have presented that record to the court. Presumably, the bank wishes that the trial court had received the four checks it implanted into Lisa Redcay's recent declaration. Of course, photocopies of those checks always remained in the custody of Umpqua Bank, and the bank should have produced the four checks in discovery.

In a related argument, Umpqua Bank promotes the fairness of requiring a party to assert factual arguments at the proper time so that the trial court can equitably resolve issues before it. Presumably Umpqua Bank complains that Charles Gunzel did not assert before the trial court that Cornerstone Building, not him, tendered late payments to the bank. The record reads otherwise.

Charles Gunzel moved for summary judgment before Umpqua Bank filed a motion for judgment. Gunzel then framed the issue, as to whether the statute of limitations bars the bank's suit, as if Cornerstone Building, not he personally, tendered the late payments. In his brief in support of his motion for summary judgment, Gunzel wrote: "[t]hereafter, Cornerstone Building Co. continued to make payments through December 16, 2013." CP at 7. Gunzel based this factual assertion on Umpqua's responses to discovery that showed that Umpqua Bank applied the payments to Cornerstone Building's loan account number as opposed to his personal guaranty account number. We may presume that Umpqua Bank read Gunzel's pleadings and knew that

17

Gunzel sought summary judgment based on the factual proposition that Cornerstone Building paid the late payments.

In opposition to Charles Gunzel's summary judgment motion, Umpqua Bank Assistant Vice President Lisa Redcay submitted a declaration. She did not claim in the declaration that Charles Gunzel personally tendered any payment to the bank. Instead, the bank wrote four times, in its memorandum of authorities, that, after Cornerstone Building's default, Gunzel, as president of the corporation, continued to direct Cornerstone to make payments to Umpqua Bank until December 2013. If the bank wished to foster the factual contention that Gunzel directed payments, Umpqua Bank should have cited to the record, but it failed to corroborate this assertion with any evidence. More importantly, if the bank believed that Gunzel personally issued payments, the bank should have presented the trial court copies of the four checks it then held in its possession. To rebut a properly supported summary judgment motion, the adverse party may not rest on allegations. CR 56(e); *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975).

Umpqua Bank thereafter moved for summary judgment. In opposition to the bank's motion, Charles Gunzel submitted a declaration that read, in part:

> I did not consent to the extension of the debt evidenced by loan number 3468648478 owed by Cornerstone Building Company to Umpqua Bank beyond the maturity date of May 28, 2009. Cornerstone Building Company continued to make payments on loan number 3468648478 until December of 2013.

CP at 220. Thus, in order to defeat the bank's motion, Gunzel presented testimony that Cornerstone Building made late payments. We may assume that the bank then understood that Gunzel placed the identity of the payor of the late payments at issue.

In its brief supporting its motion for reconsideration, Umpqua Bank writes that Charles Gunzel "*buried* in a declaration," his avowal that Cornerstone Building tendered the payments. Resp't Umpqua Bank's Mot. for Recons. and to Suppl. the R. at 2. We are unsure as to why the bank characterizes this testimony as "buried," when the testimony was in the same font and English language as found the bank's own pleadings and was filed in the same manner as Lisa Redcay's declaration in support of the bank's motion. No facts suggest and Umpqua Bank does not argue that Gunzel entombed his avowal in Iron Mountain.

Umpqua Bank filed a reply brief in support of its summary judgment motion. In support of its attempt to impose personal liability on Charles Gunzel, the bank wrote that: "Mr. Gunzel . . . was the actual person responsible for continuing to make payments to Umpqua after the debt became due and owing." CP at 226. The bank later wrote, in the reply brief: "Umpqua merely notes that Gunzel's payments after the debt became due and owing extended the statute of limitations of the debt [under the guaranty] as this Court has already found as a matter of law." CP at 226-27. Thus, the bank sought judgment based on the factual assumption and assertion that Gunzel personally issued payments.

Unfortunately for Umpqua Bank, it failed to cite to the factual record to show that Gunzel personally made a payment, and thus it did not contradict Gunzel's declaration of payment by the company. Uncontroverted, relevant facts offered in support of summary judgment are deemed established. *Central Washington Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 354, 779 P.2d 697 (1989); *Parrott Mechanical, Inc. v. Rude*, 118 Wn. App. 859, 864, 78 P.3d 1026 (2003). Although courts generally apply this rule in the context of the nonmovant failing to file contravening affidavits, the rule should apply with added force to the movant failing to file countering declarations since the moving party carries the burden to show by uncontroverted facts the lack of a genuine issue of material fact. *Hope v. Larry's Markets*, 108 Wn. App. 185, 191, 29 P.3d 1268 (2001).

In its brief in support of its motion for reconsideration before this court, Umpqua Bank writes that the trial court based its ruling on a finding that Charles Gunzel made the payments that extended the statute of limitations. The bank, however, fails to cite to the trial court record in support of its assertion that the superior court entered a finding. Anyway findings of fact on summary judgment are not proper, are superfluous, and are not considered by the appellate court. *Chelan County Deputy Sheriffs' Association v. County of Chelan*, 109 Wn.2d 282, 294 n.6, 745 P.2d 1 (1987); *Kries v. WA-SPOK Primary Care, LLC*, 190 Wn. App. 98, 117, 362 P.3d 974 (2015). If the court had entered such a finding, we would have needed to review whether any facts supported the

finding for purposes of affirming the ruling or whether facts contravened the finding so as to require denial of the summary judgment motion.

Umpqua Bank contends that the circumstantial evidence established that Charles Gunzel must have tendered the late payments because of Cornerstone Building being a defunct closely held corporation. In Charles Gunzel's declaration, he testified that Cornerstone Building had dissolved as a corporation. Nevertheless, in opposition to Charles Gunzel's summary judgment motion and in support of its summary judgment motion, the bank never submitted evidence about stockholders and officers of the corporation. Although Gunzel may have provided money to Cornerstone Building to pay and may have directed the corporation to pay, others also could have done so. The case's factual record shows nothing about the inner operations of Cornerstone Building. Mere speculation cannot support or defeat a motion for summary judgment. *Kyreacos v. Smith*, 89 Wn.2d 425, 429, 572 P.2d 723 (1977); *Heringlake v. State Farm Fire & Casualty Co.*, 74 Wn. App. 179, 192, 872 P.2d 539 (1994). Just as important, Umpqua Bank never argued before the trial court or earlier argued before this court that circumstantial evidence compelled such a conclusion.

Umpqua Bank emphasizes the newly discovered evidence of four checks, "dug out of Iron Mountain," which the bank claims shows perjury. We assume the bank does not suggest that it literally encountered difficulty by shoveling underground and into a mountain in order to locate records deeply buried years ago. Declarant Lisa Redcay

provided no explanation for the late submittal of the four checks. If the evidence was available but not offered until after that opportunity passes, the parties are not entitled to another opportunity to submit that evidence. *Davies v. Holy Family Hospital*, 144 Wn. App. 483, 500, 183 P.3d 283 (2008), *abrogated on other grounds by Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 393 P.3d 776 (2017).

Finally, Umpqua Bank complains that this court's initial opinion was based almost entirely on Charles Gunzel's declaratory statement that Cornerstone Building tendered the late payments. To the contrary, this court engaged in an extensive analysis as to the language in Charles Gunzel's commercial guaranty, the Oregon statute of limitations on promissory notes, the difference between when the limitation period accrues for purposes of the debt of the borrower and when the period accrues for purposes of the guarantor's obligation, waiver of the protection of the statute of limitations, and public policy against waivers. This court wrote only one paragraph in its legal analysis about the implications of whether Charles Gunzel or Cornerstone Building issued the late payments. We accurately noted that, despite occasionally asserting that Gunzel tendered the payments, the bank submitted no evidence in support of its assertion.

In its respondent's brief, Umpqua Bank identified issue 1 on appeal as:

> Whether the trial court correctly concluded that *Gunzel's continued payments* on the Note after its maturity date extended the statute of limitations on its corresponding personal guaranty in accordance with Oregon law?

22

Resp't Umpqua Bank's Response Br. at 3. This framing of the issue required the court to determine whether the facts submitted during the summary judgment process supported the factual assumption inserted into the issue and, if so, whether personal payments extended the running of the statute of limitations. The bank's own framing of an issue required that this court resolve whether late payments by Charles Gunzel extended the statute of limitations. Facts inserted into a party's statement of issues are fair game for this court to challenge and to issue a decision based on a lack of support for the purported facts.

This court abhors perjury. We recognize the possibility that Charles Gunzel committed perjury. With the denial of Umpqua Bank's motion for reconsideration, we remand the case to the superior court to enter judgment in favor of Gunzel. Our ruling, however, does not preclude Umpqua Bank from later filing in the superior court a motion for relief of judgment pursuant to CR 60(b). The superior court sits in a better position than this court to determine if Gunzel perjured himself, to assess whether the bank engaged in due diligence when responding to discovery and when searching its records, and to weigh the equities between the parties. We proffer no opinion as to the validity of any motion for relief from judgment.

No. 37400-9-III
*Umpqua Bank v. Gunzel, III*

CONCLUSIONS

We deny Umpqua Bank's motion to submit additional information and its motion

for reconsideration.  We confirm our first opinion.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.