IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JEREMY LOTT, derivatively on behalf of BLUE MOUNTAIN FARMS, L.L.C., | ) ) ) | No. 38712-7-III |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| SHIRLEY LOTT, | ) ) | |
| Respondent, | ) ) | |
| BLUE MOUNTAIN FARMS, L.L.C., | ) ) | |
| Nominal Defendant. | ) | |

STAAB, J. — Jeremy Lott appeals the superior court's entry of summary judgment in favor of Shirley Mason (formerly known as Shirley Lott). Lott brought this derivative suit on behalf of Blue Mountain Farms, LLC (BM Farms) against Mason, the operations manager. He argued, among other things, that Mason had breached her fiduciary duty to BM Farms and wrongly restricted shareholder access to records. The superior court granted Mason's motion for summary judgment dismissing Lott's complaint.

Lott appeals, arguing that the superior court erred in granting the motion for summary judgment because Mason improperly: (1) made a $750,000.00 payment from BM Farms to another company, (2) made a personal loan to BM Farms, (3) took out a loan in the amount of $1,424,111.28 on behalf of BM Farms to pay for Applegate's

packing facility, (4) made a loan to Blue Mountain Packing, LLC (BM Packing) on behalf of BM Farms, (5) attempted to convert an initial 2006 capital contribution to BM Farms to a loan by drafting a promissory note in 2011 in violation of her fiduciary duty, and (6) denied Lott access to the financial records for BM Farms.

We determine that there is a question of fact regarding whether Mason violated her fiduciary duty in drafting the promissory note in 2011 and accordingly, the superior court erred in granting summary judgment on that claim. However, we determine that the remainder of Lott's arguments fail and therefore affirm summary judgment on the remainder of the claims.

## I.     FACTS

Because this issue was decided on summary judgment, the following facts are set forth in a light most favorable to the non-moving party, Lott.

### A. BACKGROUND

BM Farms was a Washington limited liability company that engaged in the business of blueberry farming. It was founded in 2005[1] by Shirley Mason and her then husband. Mason and her husband gifted three of their children, including Jeremy Lott, a 12 percent interest each in BM Farms. Mason and her husband retained the remaining 64 percent interest in BM Farms.

---

[1] Although Mason stated in her declaration that BM Farms was founded in 2005, in her deposition she said it was founded in 2006.

BM Farms' operations were governed by an operating agreement executed by the members. The operating agreement contained a provision explaining the business BM Farms would engage in:

(a) To own and operate real property and/or to farm blueberries and other agricultural crops;

(b) To exercise all other powers necessary to or reasonably connected with the Company's business which may be legally exercised by limited liability companies under the Act.

Clerk's Papers (CP) at 59. The operating agreement also laid out the "duties of [the] operations manager," stating that the operations manager was authorized to make payments on behalf of BM Farms "not to exceed $250,000.00." CP at 59. Additionally, it contained a provision regarding loans from members to the company: "Nothing in this Agreement shall prevent any Member from making secured or unsecured loans to the Company, if unanimously approved." CP at 66.

Lott worked for BM Farms from 2005 to 2008 but has not been involved with the company since then. Initially, Mason's husband was the operations manager, but Mason became the operations manager in 2010.[2] In 2013, Mason and her husband divorced, and Mason received the couple's entire 64 percent share in BM Farms.

---

[2] Mason's declaration states that she became the operations manager of BM Farms in 2010, however, in her deposition she stated that she became the operations manager in 2013.

3

Blue Mountain Packaging, LLC (BM Packing) was a Washington limited liability company founded in 2007. It engaged in the business of managing the packing of blueberries. BM Packing contracted with BM Farms to pack BM Farms' blueberries.

At times, BM Packing borrowed large sums of money from BM Farms to cover its operating costs. BM Packing repaid these loans "[w]henever it [could]." CP at 295. BM Farms' balance sheet from 2020 showed that BM Packing owed BM Farms a total of $927,851.23.

Applegate Orchards, Inc., is a Washington corporation owned solely by Mason and existed for the purpose of farming. Applegate is the parent company and funded the startup costs for both BM Farms and BM Packing. It owned the blueberry packing facility that BM Packing used for its packing business.

Applegate provided funds to BM Farms upon its startup in 2005. In 2011, six years later, Mason drafted an unsigned promissory note on behalf of BM Farms regarding the funds provided in 2005 stating that those funds were provided as a loan:

> Blue Mountain Farms LLC promises to pay to the order of Applegate Orchards, Inc. the principal sum of two million four hundred twenty seven thousand one hundred twenty one and 2/100 Dollars ($2,427,121.02), with simple interest at the fixed rate of four and a quarter percent (4.25%) per year.
>
> The nature of the Note is to pay for initial start up costs of the blueberry farm provided by Applegate Orchards, Inc. Due to the unknown certainty of farming of Blue Mountain Farms LLC and desire of Applegate Orchards, Inc that this project succeed, the principal and interest payment amount and

4

timing will be left to the decision of the Manager of Applegate Orchards, Inc.

CP at 125. Included with the promissory note was a balance sheet providing the amount due and interest accrued each year and stating the interest rate was 4.25 percent. The balance sheet also stated that the total accrued interest on the loan as of December 31, 2011 was $103,153 or 4.25 percent of the total balance of the loan.

Mason maintained that the startup funds provided by Applegate to BM Farms were always intended to be a loan but admitted that the postdated promissory note was the only document supporting the fact that the funds provided by Applegate were a loan. She said that the loan was made but never documented due to the poor bookkeeping practices of her former husband, the prior operations manager.

In 2020, Lott requested he be provided with the financial records for BM Farms. In an email to Mason, he said, "Shirley, will you please provide all of the accurate financial statements to ALL of the company partners on an annual and quarterly basis?" CP at 160. Mason replied saying that Lott had already been provided with yearly financial statements.

B. SUPERIOR COURT PROCEEDINGS

Lott brought this derivative action against Mason on behalf of BM Farms, raising claims including breach of fiduciary duty and restriction of shareholder access to records.

Subsequently, Mason brought a motion for summary judgment on each of Lott's claims. In response, Lott raised several arguments. Lott argued that Mason improperly: (1) made a personal loan to BM Farms, (2) took out a loan in the amount of $1,424,111.28 on behalf of BM Farms to pay for Applegate's packing facility, (3) made a loan to BM Packing on behalf of BM Farms, (4) attempted to convert an initial 2005 capital contribution to BM Farms to a loan by drafting a promissory note in 2011, and (5) denied Lott access to the financial records for BM Farms.

Lott stated in his declaration supporting his response to the motion for summary judgment that Mason had made an "interest payment" of $750,000.00 on behalf of BM Farms to Applegate. However, he did not specifically allege in the complaint or in his response that such payment was a part of his claims.

The superior court granted Mason's motion for summary judgment. Lott appeals.

## II.    ANALYSIS

Orders on summary judgment are reviewed de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Evidence is considered in a light most favorable to the nonmoving party. *Id.* Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Mere speculation is insufficient to support or defeat a motion for summary judgment. *Umpqua Bank v. Gunzel*, 19 Wn. App. 2d 16, 34, 501 P.3d 177 (2021).

A. PAYMENT TO APPLEGATE

Lott claims that Mason made an interest payment of $750,000.00 from BM Farms to Applegate. He claims that, in making this payment, Mason violated the provision of the operating agreement that prevented the operations manager from making payments in excess of $250,000.00. Lott also broadly claims that the payment violated Mason's fiduciary duty and constituted unjust enrichment because the payment was to Applegate, a company of which she is the sole owner. Mason contends that there is no evidence of such a payment. We disagree with Lott's argument and affirm the superior court's entry of summary judgment on this issue.

As an initial matter, Lott did not specifically raise this issue in his complaint and only arguably raised it at summary judgment. Accordingly, we need not address the merits of Lott's arguments. *See* RAP 2.5. However, even on the merits, Lott's arguments fail.

In his declaration, Lott alleged that in 2019, Mason "wrote Applegate Orchards a check for $750,000[.00] and called it an interest payment." CP at 113. Lott fails to explain any basis he would have for knowing of the existence of such a check, and he has not been employed by BM Farms since 2008. Moreover, apart from Lott's baseless and speculative statement, the record contains no evidence of the existence of such a check. Because the only evidence supporting the existence of such a payment is speculative and therefore

insufficient to survive summary judgment, we disagree with Lott's argument.[3] *See Gunzel*,

19 Wn. App. 2d at 34. Thus, we determine that the superior court did not err in ordering

summary judgment for Mason on Lott's claim pertaining to the alleged payment.

B. PERSONAL LOAN TO BM FARMS

Lott argues that Mason's personal loan to BM Farms violated the operating

agreement. Specifically, he relies on the provision within the operating agreement that

provides: "Nothing in this Agreement shall prevent any Member from making secured or

unsecured loans to the Company, if unanimously approved." CP at 66. Lott claims that

this provision requires unanimous approval by the members before a member can make a

loan to BM Farms. We disagree.

Where it does not require the use of extrinsic evidence, contract interpretation is a

question of law this court reviews de novo. *In re Estate of Petelle*, 195 Wn.2d 661, 665,

462 P.3d 848 (2020). The focus of this court in interpreting a contract is the intent of the

parties, which is determined by "focusing on the objective manifestations of agreement."

*State v. R.J. Reynolds Tobacco Co.*, 151 Wn. App. 775, 783, 211 P.3d 448 (2009). "We

---

[3] Lott also argues that, under RAP 2.5(a), this court should not consider Mason's argument regarding the speculative nature of Lott's statement because it is made for the first time on appeal and not specifically raised below. However, RAP 2.5(a) applies to claims of error raised for the first time on appeal. Lott is objecting to an argument under a claim of error, not a newly raised claim of error. Accordingly, RAP 2.5(a) does not apply.

give words their ordinary, usual, and popular meaning unless the entirety of the agreement evidences a contrary intent." *Id*.

Lott claims that the operating agreement requires unanimous approval by the members before a member can make a loan to BM Farms. In making this argument, he relies solely on the above provision. However, this is a misreading of the ordinary meaning of the provision. The intent is clearly to ensure that nothing in the operating agreement would prevent a member from making a loan to BM Farms where there is unanimous approval. It says, regardless of what is stated herein, unanimity will trump. To construe the provision as always requiring unanimity, as Lott urges, would be interpreting it contrary to its ordinary meaning, and we decline to do so.[4][5]

Accordingly, we conclude Lott has failed to show that there is a question of fact regarding whether Mason breached the operating agreement in personally loaning money to BM Farms and determined that the superior court did not err in granting summary judgment on this issue.

---

[4] Lott also broadly claims that Mason breached her fiduciary duty in making these loans because she was engaged in "self-dealing." Lott cites to no authority to support his claim for breach of fiduciary duty. Accordingly, we decline to address this argument. *See* RAP 10.3(a); *Regan v. McLachlan*, 163 Wn. App. 171, 178, 257 P.3d 1122 (2011) ("We will not address issues raised without proper citation to legal authority.").

[5] Lott also argues for the first time in his reply brief that a personal loan to BM Farms was not permitted absent written consent from the members. We decline to address this issue raised for the first time in the reply brief. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

C. Debt for Construction of Packing Facility

Lott argues that Mason breached her fiduciary duty in taking out a loan on behalf of BM Farms to pay for a packing facility constructed and owned by Applegate. We disagree.

Lott fails to present competent evidence sufficient to create a material issue of fact. The 2020 balance sheet for BM Farms contains a section for long term liabilities. One line in the section says "2500—Conterra #R2040" and then lists the amount of $1,424,111.28. Lott speculates that this loan was taken out to help fund a packing facility for Applegate, solely owned by Mason. Lott appears to be arguing that Mason engaged in self-dealing by taking out the loan. However, Lott fails to point to any evidence supporting his speculative assertion that the loan was used to pay for the packing facility.

Lott also fails to cite any legal authority to support his claim for breach of fiduciary duty. Accordingly, we disregard this argument. *See* RAP 10.3(a); *Regan v. McLachlan*, 163 Wn. App. 171, 178, 257 P.3d 1122 (2011) ("We will not address issues raised without proper citation to legal authority.").

Lott's argument for breach of fiduciary duty fails because the facts he purports support the argument are merely speculative, and he fails to provide legal support for his claim. Accordingly, the superior court correctly granted summary judgment in favor of Mason.

D. BM FARMS' LOAN TO BM PACKING

Lott claims that Mason violated the operating agreement by making a loan to BM Packing on behalf of BM Farms because the purpose of the company "is not to make loans to [BM Packing] on unknown terms." Br. of Appellant at 40. He claims that making a loan is not "'reasonably connected with the [c]ompany's business'" of owning and operating real property and farming blueberries and other crops. Br. of Appellant at 40 (alteration in original) (quoting CP at 59). Therefore, he argues that the making of such a loan is a violation of the operating agreement. We disagree.

As explained above, contract interpretation is a question of law reviewed de novo. *Petelle*, 195 Wn.2d at 665.

The record supports, and Mason admits, that BM Farms loaned funds to BM Packing to help cover its operating costs. According to Mason, BM Packing repays these loans when there are funds available. There is nothing in the operating agreement that specifically prohibited BM Farms from making such loans. However, Lott claims that the action went against the stated business of the company as laid out in the operating agreement. The agreement states:

The business of [BM Farms] shall be:

(a) To own and operate real property and/or to farm blueberries and other agricultural crops;

> (b) To exercise all other powers necessary to or reasonably connected with the Company's business which may be legally exercised by limited liability companies under the Act.

CP at 59.

The term "reasonably connected" is extensive and covers a broad range of activities as long as there is some connection to BM Farms' business activities. In this instance, BM Farms' loan to BM Packing is reasonably connected to its business activities. The companies' businesses overlap because they are both related to farming, and BM Farms contracts with BM Packing for the packing of its blueberries. Because BM Farms does business with BM Packing, it likely has an interest in BM Packing's well-being as a company and maintaining a good relationship with BM Packing. Accordingly, BM Farms making a loan to BM Packing is reasonably connected to its business.[6]

Because the loan was reasonably related to BM Farms' business and Lott has pointed to nothing else in the operating agreement that would prohibit it, Lott fails to establish a question of fact regarding whether Mason breached the operating agreement by making a loan to BM Packing.

---

[6] Lott also argues that Mason violated her fiduciary duty to BM Farms by using the company's funds to make loans to BM Packing. However, Lott fails to provide legal citation or analysis in support of this argument. Accordingly, we decline to address it. *See* RAP 10.3(a); *Regan*, 163 Wn. App. at 178.

12

E. PROMISSORY NOTE

Lott argues that Mason breached her fiduciary duty to BM Farms by converting startup funds provided by Applegate into a loan. He claims that the funds were initially intended to be a capital contribution, but Mason subsequently converted them into a loan. This, Lott maintains, constituted self-dealing because Mason is the sole owner of Applegate. We determine that, on this issue, Lott has demonstrated that there is a question of material fact as to whether Mason breached her fiduciary duty.

Prevailing on a claim for breach of fiduciary duty requires a plaintiff to establish: (1) a duty owed, (2) breach of the duty, (3) resulting injury, and (4) alleged breach proximately caused the injury. *Miller v. U.S. Bank of Wash., N.A.*, 72 Wn. App. 416, 426, 865 P.2d 536 (1994). The party alleging the breach of fiduciary duty bears the burden of proof. *Senn v. Nw Underwriters, Inc.*, 74 Wn. App. 408, 414, 875 P.2d 637 (1994).

The manager of an LLC owes a fiduciary duty of loyalty to the company and its members. RCW 25.15.038(1)(a). The duty of loyalty requires "avoiding secret profits, self-dealing, and conflicts of interest." *Horne v. Aune*, 130 Wn. App. 183, 200, 121 P.3d 1227 (2005); RCW 25.15.038(2). Lott claims that Mason breached this duty by converting a capital contribution to a loan that benefitted a company she owned.

Mason claims that the funds were a loan from the inception of BM Farms, and Lott has failed to present evidence showing they were initially intended to be a

13

contribution. She testified in her deposition that the loan was made in 2005 but never documented due to the poor bookkeeping practices of her former husband, the prior operations manager. As a result, Mason documented the loan as soon as she became the operations manager.

However, as Lott points out, the declining balance on the loan shows that the entire amount was still due in 2011. Moreover, the total interest owed on the loan in 2011 was 4.25 percent of the total value of the loan, or one year's worth of interest. Had the loan been made six years prior, as Mason claims, the total interest due would have been much greater. All of this information, combined with the fact that there was no documentation of the loan prior to 2011, creates a question of material fact as to whether the funds from Applegate were always intended to be a loan or whether they were initially intended to be a capital contribution. Because Mason was the sole owner of Applegate, subsequent action attempting to convert the capital contribution into a loan could be self-dealing and a breach of her fiduciary duty.

Mason argues that Lott's claim should fail because he cannot prove damages on the part of either himself or BM Farms resulting from the alleged breach of fiduciary duty. This argument ignores the significant difference between a loan and a capital contribution. If Lott's claims are true, Mason's actions resulted in almost $1.5 million in additional liability for BM Farms that did not actually exist. This would impact BM Farms' balance sheet and the value of each owner's interest.

14

Additionally, Mason claims that because the fiduciary duty statute does not explicitly provide a cause of action for damages, none exists. She claims that the only available remedy for breach of fiduciary duty by the operations manager is the removal of the manager as allowed for in the operating agreement.

Contrary to Mason's argument, "[b]reach of a fiduciary duty imposes liability in tort." *Miller*, 72 Wn. App. at 426. Even if the statutes do not provide a separate cause of action, they may provide the duty. In this case, that duty is set forth in RCW 25.15.038. *See, e.g.*, *Von Heydt v. Ebert*, No. 82304-3-I, slip op. at 8 (Wn. Ct. App. Aug. 29, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/823043.pdf; *Senn*, 74 Wn. App. at 416-17. Apart from her statement that the statute does not provide for this action, Mason provides no additional support for her argument. Accordingly, because such an action is clearly permitted, we disagree with her argument.

Because there is a question of fact regarding whether Mason breached her fiduciary duty to BM Farms in drafting the promissory note, we determine that the superior court erred in entering summary judgment on this claim.

F. ACCESS TO COMPANY RECORDS

Lott argues that Mason wrongly prevented him from accessing the records for BM Farms. He claims that he requested access to the records multiple times but was repeatedly denied access in violation of Washington law. We disagree.

1. Legal Principles

Washington law requires a limited liability company (LLC) to keep certain company records, including a copy of any financial statements for the three most recent years, at its principal office. RCW 25.15.136(1). A member of an LLC may inspect these records during regular business hours upon giving ten days' notice to the company. RCW 25.15.136(2). The statute also requires that the requesting member make a demand "in a record received by the limited liability company" prior to inspection. *Id.*. Within ten days of the LLC receiving the demand, it must inform the member:

> (a) What records the limited liability company will provide in response to the demand;
> (b) When and where the limited liability company will provide the records; and
> (c) If the limited liability company declines to provide any demanded records, the limited liability company's reasons for declining.

RCW 25.15.136(5).

2. Application

Lott claims that Mason wrongly denied his request for BM Farms' financial records. Although he states that he was wrongly denied access to records on multiple occasions, he only raises argument regarding one occasion. Accordingly, we limit our review to the scope of Lott's actual argument.

In an email to Mason, Lott requested that Mason provide all financial statements to "company partners" on an annual and quarterly basis. He argues that Mason refused

his request and that this refusal was in violation of the requirements of the statute.

However, as Mason points out, Lott failed to comply with the procedural requirements of

RCW 25.15.136.

The statute requires an LLC to provide members the opportunity to inspect and

copy records at its principle office provided the member gives ten days' notice. Lott did

not request an opportunity to inspect or copy the records. Rather, he requested that they

be provided to him, and he failed to give any notice. Accordingly, Lott failed to follow

the requirements of the statute in making his request.

Additionally, the statute allows for a member to inspect and obtain copies of

records *already in existence* because it pertains to records from the three most recent

years. *See* RCW 25.15.136(1). It does not allow a member to make an ongoing request

for records that are not yet in existence. Because Lott's request was forward looking and

pertained to documents that were not yet in existence, it fell outside the scope of the

statute.[7,8]

---

[7] Although Mason addresses additional requests made by Lott in her response, Lott did not present argument regarding those requests in his opening brief. Accordingly, this research memo only addresses the argument made in Lott's opening brief.

[8] Lott argues for the first time in his reply brief that Mason's denial of his request violated the operating agreement. This court declines to consider this issue raised for the first time in the reply brief. *See Cowiche Canyon Conservancy*, 118 Wn.2d at 809 ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

Mason did not violate Washington law in denying Lott's request because he failed to follow the statutory procedures and his request was outside the scope of the statute. Accordingly, the superior court did not err in granting Mason's summary judgment on Lott's access to records claim.

### III.    CONCLUSION

In sum, we reverse the superior court's summary judgment order as it relates to Lott's fiduciary duty claim regarding Mason's drafting of the promissory note.  But we otherwise affirm the superior court's entry of summary judgment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____                    _____
Fearing, J.                                                                      Pennell, J.