
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TEAMSTER'S LOCAL 839, | ) | |
| | ) | No. 39814-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FRANKLIN COUNTY, A | ) | UNPUBLISHED OPINION |
| WASHINGTON MUNICIPAL ENTITY, | ) | |
| CLINT DIDIER, ROCKY MULLEN, | ) | |
| BRAD PECK, IN THEIR OFFICIAL | ) | |
| CAPACITIES AS MEMBERS OF THE | ) | |
| BOARD OF COUNTY | ) | |
| COMMISSIONERS FOR FRANKLIN | ) | |
| COUNTY, AND JAMES D. RAYMOND, | ) | |
| IN THEIR OFFICIAL CAPACITY AS | ) | |
| FRANKLIN COUNTY SHERIFF, | ) | |
| | ) | |
| Petitioners. | ) | |

STAAB, A.C.J. — An arbitrator found that new rules, issued by the Franklin

County Sheriff that restricted the union's ability to contact union employees in the jail,

violated the collective bargaining agreement (CBA) with the Teamsters Local 839

(Union). The arbitrator ordered the Sheriff to rescind the rules. The Union then filed a

complaint in superior court to enforce the arbitrator's decision. Ultimately, the superior

court granted the Union's motion for summary judgment and ordered Franklin County to

rescind the rules and restore the Union's ability to meet with its members in the jail. The county appeals, arguing that the arbitrator's award should be overturned because it violated public policy and was arbitrary and capricious. We affirm the trial court's order on summary judgment.

## BACKGROUND

"Courts do not review an arbitrator's factual determinations." *Int'l Union of Operating Eng'rs, Local 286 v. Port of Seattle*, 176 Wn.2d 712, 716 n.1, 295 P.3d 736 (2013). Accordingly, the factual background is taken from the arbitrator's written opinion.

*Factual Background*

"The Union represents a bargaining unit of correction officers, corporals, and sergeants who work inside the Franklin County Jail." Clerk's Papers (CP) at 7. The Union and Franklin County Corrections are parties to a CBA "that was in effect from August 1, 2018 to December 31, 2020." CP at 7. The CBA contained a provision, article 25.2, allowing the Union's labor representative to visit employees of the jail to investigate grievances:

> The Labor Representative of the Association may visit the work location of employees covered by this Agreement at any reasonable time for the purpose of investigating grievances. Such representative shall limit activities during such investigations to matters relating to this Agreement. County work hours shall not be used by employees or Association

Representatives for the promotion of Association affairs other than stated above.

CP at 90.

The labor representative started visiting employees in April 2020. He would call ahead of time to inform the commander of his visit. Initially, he went through security procedures before entering the jail. However, he eventually did not need to go through these procedures and was instead met by someone at the front entrance and then led into the jail.

The labor representative generally met with employees in the jail's offices. He met with employees and investigated grievances related to, among other issues, "contractual meals for employees working overtime, the overtime sign-up bulletin board," the "method of passing medication to inmates," and a harassment claim. CP at 11. He never walked around the jail unattended, and if it was necessary to visit a location within the jail, "he was escorted to the master control station to observe the areas of the inmates." CP at 11.

In October 2020, a corporal was called into a meeting with her supervisor where "the supervisor threatened the corporal with discipline for insubordination." CP at 12. "The corporal called [the labor representative] for help," and the labor representative "went to the Jail to speak to the Commander." CP at 12.

A few days later, the sheriff emailed the labor representative about his meeting with the commander, stating that command "staff would no longer respond [to the labor representative]." CP at 12. The sheriff further stated: "This developing environment of corrections deputies squealing to their union rep when they don't get their way is coming to an end." CP at 12.

Two weeks later, the labor representative went to the jail to meet with an employee and was denied access. He was told he "would have to meet with the employee . . . in the Sheriff's office." CP at 12. The labor representative was subsequently informed "he would no longer be allowed inside the jail facilities and if he needed to inspect an area in the jail facility, he would need to be escorted by the Sheriff or someone from [human resources]. CP at 12.

*Arbitration*

The Union filed a grievance alleging a violation of article 25.2 of the CBA with the Public Employment Relations Commission (PERC). PERC referred the matter to arbitration.

An arbitrator was appointed, and a hearing was held during which witnesses testified and exhibits were submitted into evidence.

The Union argued that the county's decision to implement new rules restricting the representative's ability to visit its members was a clear breach of article 25.2 of the CBA. In response, the county maintained, among other things, that there was a safety concern

4

in escorting visitors through secure areas because it reduced staffing levels by one or two officers when officers were needed to escort the labor representative and created a "possibility of illicit contraband entering the facility." CP at 15.

The arbitrator determined that the county violated article 25.2 of the CBA, finding that "work location" meant the jail where the employees actually worked and "any reasonable time" meant the work hours of the employees, which was 24 hours a day. CP 15, 10. The arbitrator also found that the past practices were consistent with the CBA and were reasonable. Further, the arbitrator found there were no security concerns justifying the county's unilateral rule change:

> While the Employer cites security concerns, and while security is of utmost importance in a Jail, those concerns are unsubstantiated when it comes to the [labor representative]. There were no specific instances of any security risks being posed or any instances where security was threatened. The testimony presented was hypothetical and speculative. Previously the Union was never informed of any security issue with [the labor representative's] presence in the Jail. In fact, the Employer allowed a change in the way [the labor representative] entered the Jail from the same manner as members of the public to later only needing to appear at a door to be given entry. This shows how the Employer trusted [the labor representative] and how his presence did not pose a safety threat.

CP at 19. The arbitrator accordingly ordered the county to rescind the rules it had issued altering the Union's ability to access the jail and its employees.

Following the arbitrator's award, the labor representative attempted to meet with an employee, but the commander informed him that he would not be permitted to meet with the employee as a grievance had not been filed.

On April 4, 2022, the Union filed a complaint in superior court against Franklin County and several named defendants, seeking to enforce and confirm the arbitration award.

Meanwhile, on April 28, the county issued a new order concerning access to the jail by the labor representative. The new order restricted the location where the labor representative could meet employees, added a new restriction of requiring the labor representative to notify the commander who he was visiting and when the visit would occur, and required the purpose of the meeting to be a grievance already in existence rather than a potential grievance.

In July the arbitrator held a second hearing to determine whether the county had complied with the arbitrator's first award. The county argued that it had rescinded the rules found to be in conflict with the CBA and complied with the arbitrator's award. The county further maintained that the new rules allowed for the labor representative to meet with employees on the secure side of the jail 24 hours a day, consistent with the arbitrator's award.

The Union asserted that the award had not been complied with as the previous orders had not been rescinded and the labor representative had not been permitted to enter the jail to meet with employees.

The arbitrator then issued a second decision on July 28, 2022, finding that the county was noncompliant with the initial award. The arbitrator determined that the county had not rescinded the rules found to be in violation of article 25.2 of the CBA but instead had altered and reissued them in the new order. The arbitrator found that the new order restricted the location where the labor representative may meet with employees, added a new restriction of notifying the commander who the labor representative was visiting and when the meeting would occur, and required the purpose of the meeting to concern a grievance already in existence, excluding potential grievances.

Although the arbitrator stated that it was not within her jurisdiction to say whether the new rules violated the CBA, she determined the remedy was not implemented as the labor representative's ability to meet with the employees had not been restored to the state it existed prior to October 2020, which was the intent of the initial award.

Thereafter, both parties moved for summary judgment in superior court. The superior court granted the Union's motion for summary judgment and thereby denied the county's motion. In accordance with its ruling, the superior court ordered the county to

rescind the October 2020 rules and fully restore the Union's ability to meet with members in jail.

The county appeals.

ANALYSIS

Orders on summary judgment are reviewed de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Evidence is considered in a light most favorable to the nonmoving party. *Id*. Summary judgment is appropriate only if there are no genuine issues of "material fact and the moving party is entitled to judgment as a matter of law." *Id*. Mere speculation is insufficient to support or defeat a motion for summary judgment. *Umpqua Bank v. Gunzel*, 19 Wn. App. 2d 16, 34, 501 P.3d 177 (2021).

1. ARBITRATOR'S FIRST AWARD

The county argues that the superior court erred in ordering enforcement of the arbitrator's first award, which required the county to rescind its February 2022 rules. The county argues that there is a public policy to protect inmates and ensure the security of jails, and the arbitrator's interpretation of the CBA violates this public policy. We disagree.

The circumstances in which this court will review an arbitration decision are very limited. *Kitsap County Deputy Sheriff's Guild v. Kitsap County*, 167 Wn.2d 428, 434, 219 P.3d 675 (2009). "Reviewing an arbitration decision for mistakes of law or fact would call into question the finality of arbitration decisions and undermine alternative

8

dispute resolution." *Id.* at 434-35. A broader review could also damage the freedom of the parties to contract because it would lead to more frequent intervention where the parties have bargained for a binding arbitration agreement. *Id.* at 435.

However, courts may vacate an arbitration decision where it violates a public policy. *Id.* at 435-36. The public policy in question must be explicit, well defined, and dominant and "not simply 'general considerations of supposed public interests.'" *Id.* at 435 (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000)). A determination of whether a public policy is explicit, well defined, and dominant "must be 'ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *E. Associated*, 531 U.S. at 62 (internal quotation marks omitted) (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983)).

In reviewing an arbitration award for violation of public policy, this court must first examine whether the award implicates an explicit, well defined, and dominant public policy. *Int'l Union of Operating Eng'rs*, 176 Wn.2d at 721-23. If the answer to the first inquiry is affirmative, this court must then determine whether the arbitrator's award violates that public policy. *Id.*

Here, even if we were to find an explicit, well defined, and dominant public policy that protects inmates and the security of the jail, we conclude that the county has failed to demonstrate that the arbitrator's award violated that public policy.

The county argues that the arbitration award could result in a security risk because the Union now believes it has unrestricted access to the secure portions of the jail and this unrestricted access could jeopardize the safety of prisoners and staff because it prevents the sheriff from providing security to visitors and ignores deference afforded to jail officials when it comes to security interests.

Our review of this case is limited to determining whether the superior court's order affirming the arbitrator's decision violates a public policy. The arbitrator's decision required the county to rescind its rules. Requiring the county to rescind the rules simply means that the parties' rights and duties are governed by the CBA. At oral argument, the county acknowledged that it is not challenging the validity of the CBA. *See* Wash. Ct. of Appeals oral argument, *Teamsters Local 839 v. Franklin County, et al.*, No. 39814-5-III (April 25, 2024), at 4 min., 25 sec. to 4 min., 50 sec. (on file with court).

At this time, the county's concerns about possible future actions are not supported by the facts. The arbitrator found that the parties' past practices had not created any security issues. Going forward, if the Union insists on unrestricted access that does actually cause a safety concern, the county can file a claim. Additionally, the specific terms of access to employees in the jail can be renegotiated.

10

The county has not demonstrated that the arbitrator's first award violated an explicit, well-defined, and dominant public policy.

2.    ARBITRATOR'S SECOND AWARD

The county argues that the arbitrator's second award was arbitrary and capricious and therefore should be overturned.  The Union maintains that the arbitrary and capricious standard does not apply to judicial review of arbitration decisions, and even if the standard applies, the county has failed to show that the second award was arbitrary and capricious.

The arbitrary and capricious standard is applied by this court to its review of administrative decisions.  *Clark County Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers Local 125*, 150 Wn.2d 237, 246-47, 76 P.3d 248 (2003).  The Washington Supreme Court has expressly stated that courts do not review the merits of an arbitration decision and therefore cannot apply the arbitrary and capricious standard.  *Id.* at 247.

The county has made no argument supporting its position that an arbitrary and capricious standard of review should be applied here.  Accordingly, we decline to address this argument.  *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

11

No. 39814-5-III
*Teamsters Local Union 839 v. Franklin County*

We affirm the superior court's order on summary judgment.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Cooney, J.

12